STATE OF NORTH CAROLINA v. PAUL EDWARD PEARSON

No. 7625SC621

(Filed 19 January 1977)

1. **Constitutional Law § 29; Criminal Law § 91— no blacks in jury pool — no systematic and arbitrary exclusion — continuance properly denied**

   The trial court did not err in denying defendant's motion to continue the case based on the absence of blacks in the jury pool, since defendant did not contend or show that blacks were systematically and arbitrarily excluded from the jury pool.

2. **Criminal Law § 66— in-court identification of defendant — observation at crime scene as basis**

   The trial court properly concluded that an assault victim's in-court identification of defendant was based solely on her observation of him at the crime scene and was not tainted by an impermissibly suggestive pretrial photographic identification where the evidence on *voir dire* tended to show that the victim observed defendant at least three times before he stabbed her; the room was well lighted both naturally and artificially; the assault occurred during daylight hours while the sun was shining; the victim had ample opportunity to observe defendant; and the victim was able to recount a detailed description of defendant's physical appearance including his clothing.

3. **Criminal Law § 53— expert medical testimony — admission proper**

   The trial court in a prosecution for assault properly allowed an expert medical witness who attended the victim when she was admitted to the emergency room of the hospital to express an opinion based on his own personal knowledge and observation.

---

---

APPEAL by defendant from *Ervin, Judge*. Judgment entered 5 February 1976 in Superior Court, CATAWBA County. Heard in the Court of Appeals 11 January 1977.

Defendant was indicted and tried for assault with a deadly weapon with intent to kill inflicting serious injury. The State offered evidence tending to show that on 24 September 1975 Glenda Sue Clark was employed by Reserve Life Insurance Company in Hickory. She testified that shortly after lunch that day the defendant wandered in and out of her office three or four times, pacing back and forth; that as she bent down to pick up something, defendant jumped on her, pulled her back by the hair, and stabbed her in the throat; that she struggled with him and he stabbed her again; and that she screamed that someone was coming, and defendant ran. Mrs. Clark was treated by Dr. James C. Fahl, who testifed that one of her wounds came within a fraction of an inch of the carotid artery; that if this artery had been cut extensively, Mrs. Clark would have bled to death; that as a result of the injuries, Mrs. Clark suffers from numbness of the chin and certain disorders of the eye; and that the numbness problem will be permanent.

Defendant offered evidence tending to show that on 24 September 1975 he went to the Old Professional Building to see a doctor; that as he walked down the hall, he heard someone moaning in one of the offices; that he opened the door of Mrs. Clark's office and found her lying behind a desk, bleeding; that he knelt beside her and lifted her head, and she grabbed him and screamed; and that defendant panicked and ran.

Before Mrs. Clark was allowed to identify defendant as the man who assaulted her, a *voir dire* hearing was held. The State offered evidence tending to show that after Mrs. Clark was assaulted, police officers showed her a group of photographs; that she identified one of them as a photograph of her attacker; and that the officers did not suggest that she select any one of the photographs in preference to the others. Other evidence was offered to show that on 24 September, O. A. McGuire, a Hickory policeman, received a telephone call and was given a description of the man who assaulted Mrs. Clark. He said that defendant fitted the description and that he and two other policemen went to look for defendant. They found defendant in a drug store, took him to the police station and photographed him, and this photograph was among those shown to Mrs.

Clark. The court then held Mrs. Clark's identification testimony admissible.

The jury found defendant guilty as charged, and a prison sentence of not less than 14 nor more than 17 years was imposed. Defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General James E. Magner, Jr., for the State.*

*Huffman & Adams, by Robert W. Adams, for the defendant.*

MARTIN, Judge.

[1] The defendant argues, in his first assignment of error, that the trial court erred in denying his motion to continue the case based on the absence of blacks in the jury pool. He contends that, by denying his motion, the court either abused its discretion or violated his constitutional right to a fair and impartial trial by a jury of his peers. We disagree.

It is well established, in both state and federal courts, that a defendant has a constitutional right to be tried by a jury from which members of his own race have not been *systematically and arbitrarily excluded. State v. Cornell,* 281 N.C. 20, 187 S.E. 2d 768 (1972). See also *Swain v. Alabama,* 380 U.S. 202, 13 L.Ed. 2d 759, 85 S.Ct. 824 (1965). In the case at bar, however, the defendant makes no contention that blacks were systematically and arbitrarily excluded from the jury pool. In the absence of such a contention, we are bound by the North Carolina Supreme Court's decision that unless there is systematic and arbitrary exclusion, then a defendant " . . . has no right to be indicted or tried by a jury of his own race or even to have a representative of his race on the jury." *State v. Cornell, supra* at 32, 187 S.E. 2d at 775.

There still remains the issue as to whether the trial judge abused his discretion in denying defendant's motion for a continuance. We have reviewed the record, however, and can find no reason to except the defendant's motion from the general rule that a motion for a continuance is addressed to the sound discretion of the trial judge and can be subject to review only in cases where there is manifest abuse of that discretion. *State v. Hill,* 287 N.C. 207, 214 S.E. 2d 67 (1975). Under the facts

presented to us, we cannot find any such abuse of discretion by the trial judge.

The defendant's first assignment of error is therefore overruled.

[2] By defendant's third, fourth, fifth, and sixth assignments of error, he contends that the trial court committed reversible error by finding and concluding at the close of the *voir dire* hearing that the identification of the defendant by Glenda Sue Clark was based solely upon her observation of the defendant at the scene of the crime and that such identification was not tainted by any impermissible procedures employed by the police department. We disagree.

The record before us reveals that the trial court conducted a full and extensive examination prior to allowing the identification testimony of Mrs. Clark in evidence. The trial court's findings as to the validity of the eye witness's in-court identification were amply supported by competent evidence and, therefore, conclusive on this Court. See *State v. Alford,* 289 N.C. 372, 222 S.E. 2d 222 (1976). The evidence offered by the State shows that the prosecuting witness observed the defendant at least three times before he stabbed her in the neck; that the room was well lighted both naturally and artificially; that the assault occurred during daylight hours while the sun was shining; that the prosecuting witness had ample opportunity to observe the defendant; and that she was able to recount a detailed description of his physical appearance including his clothing. It is clear to this Court that Mrs. Clark based her in-court identification on what she observed immediately before, during, and after her attack. We, therefore, hold that the trial court did not err in finding and concluding at the close of the *voir dire* hearing that the identification of the defendant by Mrs. Clark was based solely upon her own observation of defendant at the scene of her assault.

We further conclude that there was nothing in the photographic viewing of the nine pictures by the prosecuting witness that was so impermissibly suggestive as to give rise to reversible error. All of the pictures shown to Mrs. Clark were of blacks and at least three of the photographs had an unusual eye similar to defendant's. We hold, therefore, that the trial judge committed no reversible error when he decided, after *voir dire,* that

State v. Pearson

the identification of the defendant was not tainted by any of the procedures used by the police.

The defendant's third, fourth, fifth, and sixth assignments of error are therefore overruled.

[3] By his tenth assignment of error, the defendant argues that the trial court committed reversible error by allowing the State's medical witness to answer a hypothetical question without requiring the district attorney to first lay a proper foundation. We disagree.

The State's medical witness, Dr. James C. Fahl, was qualified without objection as an expert in the field of general surgery. On direct examination, he testified that one of the wounds in the victim's neck was within a fraction of an inch of the carotid artery. He was then asked: "What would have happened if that [the carotid artery] had been cut?" Over objection, he answered that if the carotid artery "had been cut extensively, she would have bled to death." At the time the witness gave this testimony, he had already told the court that he personally attended the victim when she came to the emergency room; that he examined her; that he observed her condition; that he found the source of bleeding to be two lacerations of the neck; and that he was able to observe the·carotid artery. It is therefore clear to this Court that the medical expert witness was giving his opinion based on his own personal knowledge and his own personal observations. It is clearly established in this State that "[e]xpert testimony may be presented to the jury through the testimony of an expert based on his own personal knowledge and observation. . . . " *State v. Taylor,* 290 N.C. 220, 229, 226 S.E. 2d 23, 28 (1976).

Defendant's tenth assignment of error is therefore overruled.

Defendant's remaining assignments of error have been reviewed. Examination thereof discloses no error of sufficient prejudicial effect to warrant a reversal.

The defendant had a fair trial free of prejudicial error.

No error.

Judges PARKER and ARNOLD concur.