Smith v. Carolina Footwear, Inc.

CUBA LEE SMITH, EMPLOYEE, PLAINTIFF, v. CAROLINA FOOTWEAR, INC., EMPLOYER, AND TWIN CITY FIRE INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 8010IC544

(Filed 3 February 1981)

1. Master and Servant § 77— workers' compensation — failure to appeal order — no entitlement to hearing de novo

Plaintiff was not entitled to a hearing *de novo* on her workers' compensation claim where she did not perfect an appeal from the Industrial Commission's order, the only avenue of review open to plaintiff being an application for review based on a change of condition pursuant to the provisions of G.S. 97-47.

2. Master and Servant § 77.1— workers' compensation — injury not work related — no change of condition

Plaintiff was not entitled to an award of compensation based on changed condition where the Industrial Commission made findings of fact supported by competent evidence that plaintiff did not in fact suffer any loss of capacity to work from her work related injury and that such disability as she may presently suffer resulted from an automobile accident not related to her injury at work.

3. Evidence § 50.1; Master and Servant § 93.3— workers' compensation — cause of injury — expert testimony — no necessity for hypothetical question

A medical expert was properly permitted to give opinion testimony as to the cause of plaintiff's pain without the use of a hypothetical question where the opinion was based on the expert's own personal knowledge of plaintiff's condition gained from his examination and treatment of her.

APPEAL by plaintiff from an Opinion and Award of the North Carolina Industrial Commission filed 14 December 1979. Heard in the Court of Appeals 6 January 1981.

On 20 February 1974, Cuba Lee Smith sustained an injury to her right leg in an accident which arose out of and in the course of her employment with defendant Carolina Footwear. Plaintiff was struck on the anterior portion of her right leg below the knee by a 700 pound shoe rack being pushed by a fellow employee. Plaintiff timely filed a claim for worker's compensation with the Industrial Commission on 15 July 1975.

At the hearing of plaintiff's claim, plaintiff testified that subsequent to the injury she had leg and lower back pain, that it hurt her to walk or sit and that she was unable to work. Dr. Menno Pennink, a neurosurgeon who examined plaintiff on 16 September 1975, testified that plaintiff's pain resulted not from the leg injury but

Smith v. Carolina Footwear, Inc.

from a ruptured disc that was probably caused by an automobile accident in which plaintiff was involved on 11 March 1975.

In an opinion and award filed on 3 November 1976 and later affirmed by the full Commission on 10 February 1977, the Commission denied plaintiff's claim and held that plaintiff's back and leg difficulties in 1975 were not in any way caused by or related to the injury by accident arising out of and in the course of her employment on 20 February 1974. Plaintiff did not perfect appeal of the full Commission's order.

On 22 July 1977, plaintiff moved for a rehearing of her claim and for an examination by the Industrial Commission's Medical Examiner. By order of the full Commission, plaintiff's motion was denied but a hearing was allowed for the purpose of determining whether plaintiff had experienced a change of condition under the terms of G.S. 97-47. At this hearing, on 8 May 1978, plaintiff testified that the pain in her leg had increased and that she was forced to use a cane to walk. Dr. Anthony Sainz, a physician specializing in psychiatry and neurology who had examined plaintiff, testified that plaintiff was suffering from peripheral neuropathy of the right leg that could have been caused by the injury sustained on 20 February 1974. Plaintiff also introduced certain exhibits, consisting of a medical report dated 17 August 1977 by Dr. Wahaj D. Ahmad describing an examination of plaintiff, a report dated 19 August 1977 from the x-ray department of Bladen County Hospital, a bone scan report dated 18 October 1977 from the x-ray department of Cumberland County Hospital, and an electrodiagnostic study report dated 13 October 1977 by Dr. Ahmad. Having re-examined plaintiff on motion of defendant, Dr. Pennink testified at this hearing that he found no evidence of peripheral neuropathy and that he did not feel all of plaintiff's symptoms were real.

In an opinion and award filed on 12 April 1979, the Commission found that plaintiff's right leg difficulty was not in any way caused by or related to the injury sustained on 20 February 1974, and that plaintiff had not sustained a change in condition. In an opinion and award of 14 December 1979 the full Commission, with one Commissioner dissenting, affirmed the denial of plaintiff's claim. Plaintiff has appealed from this decision of the full Commission.

*Hassell & Hudson, by Charles R. Hassell, Jr., and Robin E.*

*Hudson, for plaintiff appellant.*

*Johnson, Patterson, Dilthey & Clay, by Paul Cranfill, for defendant appellees.*

WELLS, Judge.

In her first and second assignments of error, plaintiff contends that the Commission erred in refusing to consider plaintiff's claim based on newly discovered evidence. In order to put these matters in proper perspective, we quote her motion in its entirety:

Now comes the plaintiff in the above-entitled cause and respectfully moves for a rehearing of her claim and for an examination by the Industrial Commission's Medical Examiner, pursuant to G.S. 97-47;

In support of her motion, the plaintiff shows as follows:

1. That the testimony of Dr. Menno Pennick [*sic*] on October 12, 1976, was contrary to prior verbal and written statements given to the plaintiff and third parties;

2. That she was surprised by the testimony of Dr. Pennick, [*sic*] on October 12, 1976, and was afforded no opportunity to impeach his testimony with prior inconsistent statements;

3. That she has written statements submitted by Dr. Pennick, [*sic*] to the Industrial Commission and to Ritter Finance Company which state that she was disabled by her work-related accident of February 20, 1974;

4. That the symptoms of her leg injury of February 20, 1974 are still present and, in fact, have worsened to the extent that same would be apparent upon examination by a competent physician;

5. That she has not experienced pain or other discomfort to her leg as a result of an automobile accident in which she was involved in 1975.

WHEREFORE based upon the foregoing, plaintiff through counsel respectfully requests that she be granted a rehearing of her claim for the reasons stated and that

she be examined by Dr. A. E. Harer, Medical Director of the Industrial Commission, and that his report be submitted to the Commission.

It would appear from the wording of the motion that plaintiff was seeking a hearing *de novo* on the merits of her claim. The reaction of the Commission indicates that they were uncertain as to plaintiff's intent. Their order of 28 July 1977 treated the motion disjunctively as one to re-open on grounds of newly discovered evidence, which they denied, and as one for a new hearing on change of condition, which they allowed.

[1]     We initially address the question of whether plaintiff was entitled to a hearing *de novo*. We hold that she was not. The record shows—and plaintiff admits—that she did not perfect an appeal from the Commission's order of 10 February 1977. Under those circumstances, the only avenue of review open to plaintiff was an application for review based on a change of condition, pursuant to the provisions of G.S. 97-47.[1] The Commission granted plaintiff a further hearing for the purpose of determining whether she had experienced a change of condition. At that hearing, plaintiff was allowed to present all the evidence she offered. This evidence consisted of her own testimony as to changes in her condition since her injury on 20 February 1974, the testimony of Dr. Sainz, the reports of Dr. Ahmad, and the x-ray and bone scan reports from Bladen and Cumberland County hospitals. Because it appears from the record before us that all of this evidence was generated after the Commission's order was entered in the initial hearing, we must assume that at the hearing now under review, Commissioner Rush allowed plaintiff to present or introduce all her "newly discovered evidence." These events and circumstances render plaintiff's first two assignments of error moot or groundless, and they are therefore

---

[1] § 97-47. Change of condition; modification of award. — Upon its own motion or upon the application of any party in interest on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this Article, and shall immediately send to the parties a copy of the award. No such review shall affect such award as regards any moneys paid but no such review shall be made after two years from the date of the last payment of compensation pursuant to an award under this Article, except that in cases in which only medical or other treatment bills are paid, no such review shall be made after 12 months from the date of the last payment of bills for medical or other treatment, paid pursuant to this Article.

overruled.

In two other assignments of error, plaintiff asserts that (1) the Commission erred in denying plaintiff's claim based on a change of condition; and (2) the Commission erred in finding facts which were not supported by competent evidence. We shall discuss these arguments in tandem, but in reverse order. It is not necessary for us to recite in detail the findings made by Commissioner Rush and adopted by the full Commission, but we will summarize them to the extent necessary to resolve the issues. Commissioner Rush accurately recapitulated the testimony and medical findings of Dr. Sainz, culminating in the opinion of Dr. Sainz that since her on-the-job injury, plaintiff had suffered a thirty to forty per cent loss of functional capacity, a thirty per cent loss of use of her right leg, and that these conditions could have been caused by her on-the-job injury. The Commissioner also accurately recapitulated the testimony of Dr. Pennink, whose testimony boils down to his opinion that plaintiff suffered no permanent damage from her on-the-job injury and that such pain or discomfort as she presently may suffer is a result of the disc problem caused by the automobile accident. Plaintiff does not argue that Dr. Pennink's testimony was not competent evidence. On this point, she argues that his testimony was inconsistent and conflicting. We do not find it so; but however that may be, it is not for us to weigh the evidence. That is the function of the Commission, as the trier of fact. In an appeal from an award of the Industrial Commission, the scope of our review is limited. If the findings of fact made by the Commission are supported by competent evidence, we must accept those findings as final. *Hollar v. Furniture Co.*, 48 N.C. App. 489, 490, 269 S.E. 2d 667, 668 (1980). It is clear that in the case *sub judice*, Commissioner Rush considered and weighed all the competent evidence and resolved such conflicts and inconsistencies as he may have seen in the evidence. We hold that his findings of fact were supported by competent evidence.

[2]  We next discuss whether plaintiff is entitled to an award of compensation. It is settled law that it is not the injury itself which is compensable under the Worker's Compensation statute, rather it is the loss of capacity to earn resulting from the injury which entitled the worker to compensation. *Ashley v. Rent-A-Car Co.*, 271 N.C. 76, 155 S.E. 2d 755 (1967). Where the findings of fact, supported by competent evidence, are that plaintiff did not in fact suffer any loss of capacity to work from her on-the-job injury and that such disabil-

Smith v. Carolina Footwear, Inc.

ity as she may presently suffer resulted from other causes not related to that injury, there can be no conclusion other than that reached by the Commission: Plaintiff's condition, as that term is used in G.S. 97-47, has not changed, and she is not entitled to compensation. We affirm the Commission's conclusions and overrule these assignments of error.

[3]   Finally, plaintiff argues that the Commission erred in allowing Dr. Pennink to give opinion testimony, over plaintiff's objections, as to the cause of plaintiff's pain. Plaintiff argues that the facts on which an opinion is based which are not within the knowledge of the witness, such as results of x-rays routinely done to arrive at a diagnosis, must be framed in a hypothetical question. In order to put this issue in proper perspective, we will briefly review the plaintiff's history following her on-the-job injury. Based on her testimony at the original hearing, it would appear that although plaintiff did not lose significant work time immediately following her on-the-job injury, she consulted Dr. J. E. Dunlap on 4 March 1974, about two weeks after her injury, and again on 4 April 1974. She was examined by Dr. O. A. Barnhill on 8 April, 3 June, 11 June and 27 August 1974. She was involved in an automobile accident on 11 March 1975 and returned to work on 13 May 1975. Her last day of work was 12 June 1975. Following her automobile accident, she consulted Dr. Barnhill again, who referred her to an orthopedist, Dr. Joe Meek, who treated her and later referred her to Dr. Pennink.

Dr. Dunlap was not called at the original hearing, but included in that record were the Industrial Commission's attending physician's reports made by Dr. Dunlap 15 March 1974 and 24 April 1974. In his 15 March 1974 report, Dr. Dunlap indicated plaintiff would not incur any loss of work time for her on-the-job injury and he indicated plaintiff's injury would not result in any permanent disability. The record contains a similar report by Dr. Barnhill, which indicates he examined plaintiff on 8 April 1974 and found no permanent disability. Another such report, with the same findings as to disability, was made by Dr. Barnhill dated 10 September 1974. The only medical witness called by plaintiff at her original hearing was Dr. Pennink, who testified as to his examinations and treatment of plaintiff following her automobile accident and gave his evaluation of the cause of her condition at that time as a ruptured disc. He found no injury to her leg.

Plaintiff was re-examined by Dr. Pennink on 27 July 1978. At

the hearing now under review, Dr. Pennink was called by defendant. Without objection, he testified at length as to his examination of 27 July 1978 and his findings resulting from that examination, which were essentially negative in pathological areas. He concluded his answer as follows:

> During my examination of Mrs. Smith, I did not find any evidence of peripheral neuropathy. I didn't think she had peripheral neuropathy. She did complain to me of having back and leg pain at the time of my examination.

At this point, defendant's counsel put the following question:

> Q. Did you form an opinion as to the cause of her complaints of leg pain and back pain?

Plaintiff's objection was overruled and Dr. Pennink then gave the following answer:

> A. I felt she had a disc problem which at the time was better and not an unusual thing, you see. Sometimes they have more pain coming intermittently, more symptoms or less symptoms. So it was not incompatible at all with my opinion in her case.

Over plaintiff's further objection, Dr. Pennink then proceeded to review in detail his entire medical history, diagnosis, and treatment of plaintiff since 16 September 1975.

Following Dr. Pennink's direct testimony, plaintiff's counsel cross-examined Dr. Pennink at great length, during which cross-examination Dr. Pennink testified in great detail as to his examination of plaintiff, his treatment, and as to his opinion of her condition over the span of these events. In *State v. Holton*, 284 N.C. 391, 397, 200 S.E. 2d 612, 616 (1973), our Supreme Court said:

> "It is not required that an expert testify in response to hypothetical questions when the witness has himself examined the person in question and is giving his expert opinion based on facts which he himself had observed." 3 Strong, N.C. Index 2d, Evidence § 49 (1967). *See Cogdill v. Highway Comm.* and *Westfeldt v. Highway Comm.*, 279 N.C. 313, 182 S.E. 2d 373 (1971); *Rubber Co. v. Tire Co.*, 270 N.C. 50, 153 S.E. 2d 737 (1967); *Bullin v. Moore*, 256 N.C. 82, 122 S.E. 2d 765 (1961). It is well settled in the law

of evidence that a physician or surgeon may express his opinon on the cause of the physical condition of a person if based either on facts within the personal knowledge or upon an assumed statement of facts supported by evidence and cited in a hypothetical question. 1 Stansbury's N.C. Evidence, Brandis Rev. § 136 (1973); *Yates v. Chair Co.*, 211 N.C. 200, 189 S.E. 500 (1937); *State v. Stewart*, 156 N.C. 636, 72 S.E. 193 (1911).

*See also State v. Taylor*, 290 N.C. 220, 229, 226 S.E. 2d 23, 28 (1976); *State v. Griffin*, 288 N.C. 437, 442-43, 219 S.E. 2d 48, 52-53 (1975), *death sentence vacated*, 428 U.S. 904, 49 L.Ed. 2d 1210, 96 S.Ct. 3210 (1976); *State v. Pearson*, 32 N.C. App. 213, 217, 231 S.E. 2d 279, 281-82 (1977).

We believe that the record makes it clear that Dr. Pennink's opinion was based on his own personal knowledge of plaintiff's condition, gained from his examination and treatment of her. His opinion testimony was therefore competent, and it is clear that from plaintiff's extensive cross-examination of Dr. Pennink, there was ample basis for the Commission to properly determine the weight to be given his testimony. This assignment is overruled.

The order of the Industrial Commission is

Affirmed.

Judges ARNOLD and HILL concur.