Upon review of the competent evidence of record with respect to the errors assigned, the Full Commission finds good grounds to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into at the hearing and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers Compensation Act, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. Wausau Insurance Company is the carrier on the risk.
3. The following documents are included in the record: all Industrial Commission forms in the file; the transcript of hearing conducted by Deputy Commissioner Edward Gardner on 17 September 1996; the previously taken depositions of E. O. Marsigli, M.D., Lucas J. Martinez, M.D., and Douglas K. Slater, M.D., and the Opinion and Award filed by Deputy Commissioner Edward Garner on 17 July 1997.
4. Plaintiffs medical records are marked as Stipulated Exhibit number 1.
***********
The Full Commission finds as fact the following:
 FINDINGS OF FACT
1. This case was previously heard before Deputy Commissioner Edward Garner on 17 September 1996. In an Opinion and Award filed 17 June 1997, Deputy Commissioner Garner found that plaintiff had sustained an injury by accident arising out of and in the course of her employment with defendant-employer on 18 October 1995 when she moved a bundle of leather cushions and felt a burning sensation in her neck and left arm. The deputy commissioner also found that plaintiff had sustained a herniated cervical disk caused by sewing and lifting leather cushions. He awarded plaintiff temporary total disability compensation from 31 October 1995 through 27 May 1996 at a compensation rate of $166.75 per week, and permanent partial disability compensation for a ten percent disability to the back, based on her cervical disk surgery. Neither party appealed from Deputy Commissioner Garners Opinion and Award.
2. In his Findings of Facts numbered 6 and 7, Deputy Commissioner Garner found that, although Dr. Slater had originally felt that plaintiffs problems were related to carpal tunnel syndrome, the subsequent testing was negative for carpal tunnel syndrome. In Finding of Fact 9, Deputy Commissioner Garner found that "Plaintiffs arm pain was related to the herniated disc.
3. Plaintiff filed a form 33 Request for Hearing on 3 October 1997, alleging that she had undergone a change in her condition — a worsening of carpal tunnel syndrome — entitling her to additional benefits pursuant to G.S. 97-47. Plaintiff underwent carpal tunnel release surgery on 20 July 1998.
4. Plaintiff had returned to Dr. Martinez in February 1997, with complaints of pain in both arms. Dr. Martinez ordered x-rays and a myelogram, the results of which led him to conclude that plaintiff was suffering from residual radiculopathy from the previous disk surgery. Nerve conduction studies performed by Dr. Deans in March 1997 revealed normal results. In May 1997, Dr. Martinez changed plaintiffs lifting restriction to twenty pounds due to a revision in his understanding of plaintiffs limitations. Dr. Martinez continued treating plaintiff through September 1997 but never diagnosed her with carpal tunnel syndrome.
5. On 2 October 1997, plaintiff sought treatment with Scott S. Sanitate, M.D., a specialist in physical medicine and rehabilitation. At this time, plaintiff had continued complaints of extremity pain and neck pain. Dr. Sanitate assigned plaintiff a ten percent permanent partial disability to the spine and thought plaintiffs problems stemmed more from her neck rather than from any distal extremity. Dr. Sanitate did not recommend surgical intervention for plaintiffs problems.
6. David E. Tomaszek, M.D., a neurosurgeon, began treating plaintiff on 7 January 1998. Plaintiff had complaints of neck pain, with radiation to the left arm and hand, radiation of pain behind her shoulder blades and into her lower back. EMG studies revealed severe left carpal tunnel syndrome, with no evidence of active nerve root injury coming from the neck. Dr. Tomaszek ultimately concluded that plaintiffs pain was not coming from her neck because the cervical disk surgery, nerve blocks, or a combination of the two had improved that condition. He recommended that plaintiff undergo carpal tunnel release surgery. On 20 July 1998, Dr. Tomaszek performed left carpal tunnel release surgery on plaintiff. Dr. Tomaszek opined that plaintiffs carpal tunnel syndrome was related to her original injury by accident of 18 October 1995 and had progressed since that time. He acknowledged, however, that there was a "hole in the medical evidence tracing the carpal tunnel in 1998 to plaintiffs injury in 1995.
7. On 15 July 1998, plaintiff presented to George S. Edwards, M.D., an orthopedic surgeon, for a second opinion on her scheduled carpal tunnel release surgery. Dr. Edwards diagnosed plaintiff with mild carpal tunnel syndrome for which he administered cortisone injections. Based on his review of plaintiffs medical records, the facts surrounding the 18 October 1995 injury by accident, and his personal examination, Dr. Edwards opined that plaintiffs employment with defendant-employer was not a significant causal factor or aggravating factor in the development of plaintiffs carpal tunnel syndrome.
8. Plaintiffs severe carpal tunnel syndrome, first diagnosed and confirmed by EMG studies in 1998, was unrelated to plaintiffs employment with defendant three years earlier. Any symptoms of carpal tunnel syndrome which plaintiff had in connection with her employment in 1995 had resolved.
9. The greater weight of the evidence fails to prove that plaintiffs carpal tunnel syndrome was caused by her 18 October 1995 injury by accident or by her employment with defendant-employer.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiffs carpal tunnel syndrome was not caused or aggravated by an injury by accident on 18 October 1995. G.S. 97-2(6).
2. Plaintiffs carpal tunnel syndrome does not constitute an occupational disease under the Act. G.S. 97-53(13).
3. Plaintiffs claim for carpal tunnel syndrome is not barred by the doctrine of res judicata, because her claim was brought under the theory that she sustained two injuries in 18 October 1995, and that she was not previously compensated for the carpal tunnel syndrome, which was diagnosed in 1998. G.S. 97-47; cf. Hogan v. Cone Mills Corp.,63 N.C. App. 439, 443, 305 S.E.2d 213 (1983) (discussing Smith v.Carolina Footwear, Inc., 50 N.C. App. 460, 274 S.E.2d 386 (1981)).
4. Plaintiff is not entitled to payment of medical expenses incurred for the treatment of her carpal tunnel syndrome, including her carpal tunnel release surgery. G.S. 97-2(19).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the Award of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiffs claim for benefits for carpal tunnel syndrome is DENIED.
2. Each party shall pay its own costs.
S/________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER