LEEDY, *Petitioner,*
*v.*
KNOX, *Respondent.*
(No. 76-4682, CA 9319)
581 P2d 530

David W. Hittle, Salem, argued the cause for petitioner. With him on the brief was Dye & Olson, Salem.

Keith D. Skelton, Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

TANZER, J.

**TANZER, J.**

The issue in this workers' compensation case is whether a disabled claimant whose condition is medically stationary and who is eligible for but not yet enrolled and actively participating in an authorized program of vocational rehabilitation is entitled to an interim determination of disability and award of benefits.

Claimant is 51 years old. His employment history is exclusively in unskilled or semi-skilled jobs. This claim arises from compensable injuries sustained in an employment-related automobile accident on March 2, 1976. Claimant had preexisting permanent partial disability from compensable injuries in 1970 and 1974.[1]

On July 28, 1976, the Closing and Evaluation Division issued a determination order closing claimant's 1976 injury claim. The division concluded that claimant's condition became medically stationary on May 31, 1976, and that no permanent disability resulted from the 1976 injury. Accordingly, claimant was awarded temporary total disability from the date of injury through May 31, 1976. There was no permanent disability award.

After a hearing, the referee concurred in the conclusion that claimant's condition had become medically stationary on May 31, 1976. However, the referee found that some of claimant's permanent disability was attributable to the 1976 injury. Because the referee also found that claimant was vocationally handicapped[2] and amenable to vocational rehabilita-

---

[1] Claimant's preexisting permanent partial disability was equal to 30 percent unscheduled disability for back injuries and 10 percent scheduled disability for loss of the use of his right arm.

[2] " 'Vocationally handicapped worker' means a worker who is unable to return to his regular employment because of the permanent residuals of an occupational injury or disease, and who has no other skills, aptitudes or abilities which would enable him to return to gainful employment." OAR 436-61-005(4).

tion, he concluded that an award of permanent disability should be deferred until claimant had completed or abandoned rehabilitation efforts. The referee's order states:

> "It would be premature to rule on the issue of permanent disability until after claimant undertakes further consideration and evaluation for vocational rehabilitation and completes vocational rehabilitation if that is deemed appropriate by the Disability Prevention Division of the Board.
>
> "Since claimant probably, upon closure of this reopened claim in the future by the Evaluation Division, pursuant to ORS 656.268, will be awarded some permanent disability, claimant should be encouraged to make a reasonable effort to reduce disability."

The referee not only declined to make a permanent award, but he also refused to extend claimant's temporary total disability benefits beyond the date when his condition became medically stationary. He indicated, however, that payment of temporary benefits should resume when claimant became enrolled and actively participating in an authorized vocational rehabilitation program. The Workers' Compensation Board affirmed the referee's order and claimant petitioned for review, claiming entitlement to temporary benefits from the date he was medically stationary to the date of enrollment in a rehabilitation program. We hold that he was not entitled to temporary disability benefits, but that he was entitled to permanent disability benefits during the period.

The statutes and rules relating to the nature and duration of compensation payable to injured workers are more complex following legislative amendments to the Workers' Compensation Law in 1973 and 1977. 1977 Or Laws, ch 862, § 1; 1973 Or Laws, ch 634, § 1 and ch 620. The pre-1973 statutory compensation scheme was predicated on the assumption that permanent disability could be identified and measured as

soon as the worker's condition became medically stationary. Thus, temporary disability benefits to compensate for work time lost during recuperation normally ended when the worker's condition stabilized and permanent disability, if any, was determined and an award made as of the date.[3]

The legislature amended the Workers' Compensation Law in 1973 and 1977 for the purpose, among others, of emphasizing the goal of vocational rehabilitation designed to minimize vocational disability where possible and to return disabled workers to the competitive labor market. The amendments superimposed provisions for vocational rehabilitation upon the formally simple dispositional scheme. The procedural

---

[3]Prior to 1973, ORS 656.268 provided in pertinent part:

"(1) One purpose of ORS 656.001 to 656.794 is to restore the injured workman as soon as possible and as near as possible to a condition of self support and maintenance as an able-bodied workman. Claims shall not be closed nor permanent awards, if any, made until the workman's condition becomes medically stationary.

"(2) When the State Accident Insurance Fund or direct responsibility employer believes that an injured workman's condition has become medically stationary, it shall so notify the board, the workman, and contributing employer, if any, and request the claim be examined and further compensation, if any, be determined. A copy of all medical reports necessary to make such determination also shall be furnished to the board and to the workman and to the contributing employer, if requested by such workman or employer. * * * The employer or fund may commence payment of a permanent disability award without waiting for a determination under subsection (3) of this section. If the attending physician has not approved the workman's return to his regular employment, the fund or direct responsibility employer must continue to make temporary total disability payments until termination of such payments is authorized following examination of the medical reports submitted to the board under this section.

"(3) Within 30 days after the board receives the medical reports, the claim shall be examined and further compensation, including permanent disability award, if any, determined under the board's supervision. If necessary the board may require additional medical or other information with respect to the claim, and may postpone the determination for not more than 60 additional days. Any determination under this subsection may include necessary adjustments in compensation paid or payable prior to the determination, including disallowance of permanent disability payments prematurely made, crediting temporary disability payments against permanent disability awards and payment of temporary disability payments which were payable but not paid."

accommodation for rehabilitative treatment, however, did not eliminate the continuity of support for the worker, in some form, throughout the process. ORS 656.268 now provides in pertinent part:

"(1) One purpose of this chapter is to restore the injured worker as soon as possible and as near as possible to a condition of self support and maintenance as an able bodied worker. Claims shall not be closed nor temporary disability compensation terminated if the worker's condition had not become medically stationary or if the worker is enrolled and actively engaged in an authorized program of vocational rehabilitation that has been provided according to rules adopted pursuant to ORS 656.728, provided however, that temporary disability compensation shall be proportionately reduced by any sums earned during the vocational rehabilitation period.

"(2) When the injured worker's condition resulting from a disabling injury has become medically stationary, unless he is enrolled and actively engaged in an authorized program of vocational rehabilitation, the State Accident Insurance Fund or direct responsibility employer shall so notify the Evaluation Division, the worker, and contributing employer, if any, and request the claim be examined and further compensation, if any, be determined. A copy of all medical reports and reports of vocational rehabilitation agencies or counselors necessary to make such determination also shall be furnished to the Evaluation Division and to the worker and to the contributing employer, if requested by such worker or employer. If the attending physician has not approved the worker's return to his regular employment, the fund or direct responsibility employer must continue to make temporary total disability payments until termination of such payments is authorized following examination of the medical reports submitted to the Evaluation Division under this section.

"(3) Within 30 days after the Evaluation Division receives the medical and vocational reports relating to a disabling injury, the claim shall be examined and further compensation, including permanent disability award, if any, determined under the director's supervision. If necessary the Evaluation Division may require

[ 916 ]

additional medical or other information with respect to the claim, and may postpone the determination for not more than 60 additional days. Any determination under this subsection may include necessary adjustments in compensation paid or payable prior to the determination, including disallowance of permanent disability payments prematurely made, crediting temporary disability payments against permanent disability awards and payment of temporary disability payments which were payable but not paid. The Evaluation Division shall reconsider determinations made pursuant to this subsection whenever one of the parties makes request therefor and presents medical information regarding the claim that was not available at the time the original determination was made. However, any such request for reconsideration must be made prior to the time a request for hearing is made pursuant to ORS 656.283. The time from request for reconsideration until decision on reconsideration shall not be counted in any limitation on the time allowed for requesting a hearing pursuant to ORS 656.283.

"(4) If, after the determination made pursuant to subsection (3) of this section, the director authorizes a program of vocational rehabilitation for an injured worker, any permanent disability payments due under the determination shall be suspended, and the worker shall receive temporary disability compensation while he is enrolled in the authorized vocational rehabilitation program. When the worker ceases to be enrolled and actively engaged in an authorized vocational rehabilitation program, the Evaluation Division shall redetermine the claim pursuant to subsection (3) of this section unless the worker's condition is not medically stationary."

The date at which a worker becomes medically stationary remains significant under the vocational rehabilitation amendments. Normally, as of that date, claims still are to be reviewed and closed, "time loss" temporary disability is to be terminated, and permanent disability, if any, is to be awarded. ORS 656.268(3). The date will relate to a program of vocational rehabilitation, if one is appropriate, in one of three ways: (1) where rehabilitation is completed on or before the medically-stationary date; (2) where a

rehabilitation program is commenced before but extends beyond the medically-stationary date; and (3) where the rehabilitation program does not commence until after the medically-stationary date.

The statutes and rules include provisions designed to insure prompt initiation of appropriate rehabilitative treatment. *See, e.g.,* ORS 656.300; Oregon Administrative Rule 436-61-020. Ideally, such treatment should be completed before the worker's medical condition has stabilized and his claim is closed and permanent benefits awarded or denied. In this situation the pre- and post-stationary date compensation is the same as under the pre-1973 law.

Prompt identification and treatment of vocational handicaps is not always possible, however. Consequently, training may continue beyond claim closure. In that event, the legislature has provided for the continuation of payment of temporary disability benefits (although no longer in the nature of "time loss") while a worker is "enrolled and actively engaged in a program of vocational rehabilitation." ORS 656.268(1).[4]

---

[4]Carriers who must make temporary total disability payments to a medically stable worker who is participating in a rehabilitation program are entitled to reimbursement by the Workers' Compensation Board. ORS 656.728(3) provides:

"(3) The director shall by rule provide for reimbursement to the direct responsibility employer or the State Accident Insurance Fund from the Rehabilitation Reserve any sums paid as temporary disability compensation after the date the worker is determined to be medically stationary until a program of rehabilitation has been terminated as provided by ORS 656.268. The director may deny reimbursement pursuant to this section if the direct responsibility employer or State Accident Insurance Fund has delayed beyond 14 days the referral of an injured worker for disability prevention services after receipt by the direct responsibility employer or the State Accident Insurance Fund:

"(a) Of a doctor's report indicating a possible inability of the worker to return to his former employment;

"(b) Of an investigative report indicating a possible need by the worker for disability prevention services; or

"(c) Of any other information indicating a possible need by the worker for disability prevention services."

The third situation is presented where, as here, claimant's condition became medically stationary and he was not yet enrolled and participating in an authorized program. Therefore, he was not entitled to receive temporary total disability benefits during that period because ORS 656.268(1) and (4) clearly limit eligibility to the time-loss period and to the period of such enrollment. This holding, however, is not dispositive of the case.

In providing for vocational rehabilitation, the legislature did not change the time or method for determining the extent of a worker's permanent disability award, but it added a new dimension to the assessment of that award. The extent of permanent disability now depends, not only upon a worker's physical limitations, but also upon the extent to which the worker adjusts to those limitations and learns new employment skills through vocational rehabilitation. A determination award made before the additional factor, vocational rehabilitation, can be assessed, is subject to modification upon completion of or withdrawal from a program of vocational rehabilitation.

This statute requires reimbursement for all temporary disability benefits paid beyond the medically-stationary date and until a rehabilitation program is terminated. Under ORS 656.268, "time loss" temporary disability benefits may not be terminated nor claims closed until the claimant's condition is medically stationary. However, the statute does not *require* claim closure at that time. Presumably, the Workers' Compensation Board could provide, by rule, for the continuation of temporary disability benefits until a worker is *vocationally* stable. If it did so, carriers would be entitled to reimbursement for benefits paid during the period between the medically-stationary date and claimant's enrollment and participation in an authorized program, as well as for benefits paid during claimant's participation in the program. The Board has not elected to do so. OAR 436-61-055(1) provides:

"Subject to subsections (3) and (4) of this section, an insurer shall be reimbursed, from the Rehabilitation Reserve of the Department for the net amount of any authorized sums paid as temporary disability compensation to a worker during the time he remained enrolled and actively engaged in an authorized program of vocational rehabilitation beyond the date he became medically stationary."

ORS 656.268(4) regulates the problem of post-closure rehabilitation. It provides for the suspension of permanent disability payments (which necessarily assumes receipt of such benefits until then) while the worker is actively participating in a vocational program during which he is to receive post-closure temporary disability benefits. It also provides that when the worker ceases to be enrolled in a rehabilitation program, the evaluation division shall "redetermine the claim," which necessarily assumes that the claim has previously been determined. OAR 432-61-050(4), promulgated by the Workers' Compensation Board to implement ORS 656.268(4), provides that, during periods of interruption in a vocational program, when temporary disability benefits are not due, permanent partial disability, as authorized in the suspended determination order, shall be resumed. These provisions necessarily assume that permanent disability will be awarded upon claim closure and will be based upon the extent of the claimant's disability at that time. If a claimant is able to reduce the extent of his or her disability through participation in a rehabilitation program, provision has been made for reevaluation and reduction of the permanent award. These provisions also manifest an intention to avoid a gap in the payment of compensation.

Here, the referee recognized the possibility of reduction of disability and concluded that it would be premature to assess the extent of claimant's permanent disability until his rehabilitation was completed or abandoned. This method of dealing with the problem of post-closure rehabilitation has the virtue of administrative economy and convenience in that it would delay the determination of permanent disability until it could be accurately and finally determined. However, such a delay is not authorized by statute or rule.

By delaying determination of claimant's permanent award, the Board has caused claimant to suffer an interruption in his regular receipt of benefits.

[ 920 ]

Moreover, if benefits are not made retroactive to the medically-stationary date, then claimant suffers a time gap in his compensation; if they are made retroactive, then claimant would receive compensation at the rate of his post-rehabilitation disability which might be lower than his level of disability during the pre-rehabilitation period. Neither alternative fits the statutory scheme.

We therefore hold that the determination of a claimant's permanent disability may not be delayed until completion of a post-closure rehabilitation program. Claimant was entitled to an award of permanent disability at the time his claim was closed, based upon then existing conditions. That award would be subject to review and adjustment when he completes or abandons his rehabilitation program. Therefore, this case is remanded to the Workers' Compensation Board to determine the extent of claimant's disability at the time of the original determination order and to award compensation accordingly. *Russell v. SAIF,* 33 Or App 153, 576 P2d 376 (1978).

Reversed and remanded.