Argued and submitted June 12,
affirmed as modified September 2, 1980

# In the Matter of the Compensation of
# AUSTIN,
*Petitioner,*

*v.*

# STATE ACCIDENT INSURANCE FUND,
*Respondent.*

## (WCB 78-8828, CA 16453)

615 P2d 1188

Bernard Jolles, Portland, argued the cause for appellant. On the brief were Larry N. Sokol and Jolles, Sokol & Bernstein, Portland.

Darrell E. Bewley, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Before Schwab, Chief Judge, and Thornton and Richardson, Judges.

THORNTON, J.

## THORNTON, J.

This worker's compensation case presents three issues on appeal: 1) whether the referee's award of 20 percent permanent partial disability was adequate, 2) whether claimant was medically stationary as of July 20, 1978, and 3) whether he was entitled to temporary total disability from that date until he was admitted for vocational rehabilitation.

Claimant, a police officer, injured his left knee when he stepped in a hole in a dark parking lot. We have reviewed the entire record *de novo* and conclude as to the first issue that the 20 percent permanent partial disability award accurately reflects the extent of claimant's disability.

Turning to the second and third issues, the facts are as follows:

Claimant was treated for about nine months mainly by one doctor. In June or July, 1978, the State Accident Insurance Fund (SAIF) requested that claimant be examined by another doctor. Following examination on July 13, 1978, that physician reported that claimant's condition "certainly [could] be considered stationary at this time as regards the need for further treatment." On July 20, 1978, claimant's treating physician, noting receipt of the July 13 report of the second doctor, stated that claimant would probably be unable to return to police work and recommended that claimant be admitted to the Callahan Center for physiotherapy and vocational counseling.

On August 14, 1978, the Workers' Compensation Field Services Division denied vocational training assistance. On August 31, 1978, the Workers' Compensation Disability Prevention Division notified claimant that he had been referred to the Callahan Center by SAIF beginning October 19, 1978, and that the program lasted from three to seven weeks. The letter also stated:

"Your full cooperation and participation are required under the law. Your insurer could seek

authority from the Director of the Workers' Compensation Department to reduce or suspend your compensation benefits if you fail to keep your appointment, or if you fail to participate fully in the program while at the Center."

Claimant was admitted to the center on September 15, 1978, and was released on October 27, 1978. On November 6, 1978, the Determination Division issued an order awarding ten percent permanent partial disability and temporary total disability (time loss) benefits until July 20, 1978, the date of the treating physician's letter acknowledging, without comment, the report which described claimant as medically stationary. This order was later amended to provide temporary total disability payments while claimant was enrolled at the Callahan Center. On November 16, 1978, claimant's treating physician made his final report indicating that claim closure was appropriate.

At the hearing claimant sought temporary total disability payments for the periods between July 20, 1978, and September 15, 1978, during which he was awaiting admission to the Center, and between October 27, 1978, and November 6, 1978, during which time he was out of the Center but prior to issuance of the determination order. Without hearing claimant's testimony, the referee summarily denied these benefits because claimant produced no medical report stating that he was unable to return to work and "the testimony of a worker standing alone as to his ability to work during any given period, without the necessary medical corroboration, is, as a matter of law, insufficient." Claimant sought an extension of the hearing to permit him to obtain a report from his treating doctor, but this was denied on the grounds that the principle of law was not new and claimant should have been prepared at the hearing to medically establish his inability to return to work.

■ Under the statute, a worker whose condition is medically stationary, but inactive or employed at

less than full potential while awaiting vocational rehabilitation, is not entitled to temporary disability benefits. ORS 656.268(1); *Leedy v. Knox,* 34 Or App 911, 918-19, 581 P2d 530 (1978).[1] Claimant's contention on appeal is that the referee erred in disregarding circumstantial medical evidence that claimant, consistent with his own testimony, was not released for work until November 6, 1978.

At the time of the hearing, the statute did not define "medically stationary." *See* ORS 656.005(21) (added in 1979).[2] In *Pratt v. SAIF,* 29 Or App 255, 258, 562 P2d 1242 (1977), we stated:

" * * * The term 'medically stationary' was coined by the Supreme Court in *Dimitroff v. State Ind. Acc. Com.,* 209 Or 316, 306 P2d 398 (1957), and then was codified [*see* Oregon Laws 1965, ch 285, § 31] as part of the present Workmen's Compensation Act. The

---

[1] ORS 656.268(1) provides in relevant part:

" * * * Claims shall not be closed nor temporary disability compensation terminated if the worker's condition has not become medically stationary or if the worker is enrolled and actively engaged in an authorized program of vocational rehabilitation. * * *"

Claimant argues that it is unfair to compel a worker to wait to participate in a rehabilitation program and then deny him time loss benefits. He asserts that he was relying on the August 31 letter from the Disability Prevention Division, a portion of which is set forth in the body of the opinion, and on an oral instruction from his SAIF field representative that he was to await further instructions as to whether he would be going to a rehabilitation program.

We do not believe SAIF is estopped under the circumstances to deny temporary total disability benefits to claimant during the period he was waiting to enter the Callahan Center. Admittedly, the result is somewhat unpalatable in this case because the claimant may have been able to locate in July employment of the type he eventually obtained. This situation is built into the statute, however. A worker awaiting a rehabilitation program whose condition is medically stationary may choose to forego such a program and return to work. It is true that the insurer may then petition to have claimant's benefits reduced for failure to participate in rehabilitation (ORS 656.325(4)), but we know of no case in which permanent partial disability benefits have been reduced because the worker decided he needed income more than rehabilitation.

[2] " 'Medically stationary' means that no further material improvement would reasonably be expected from medical treatment, or the passage of time." ORS 656.005(21).

Supreme Court defined that term to mean "* * * when he [the injured worker] reaches the stage at which his restoration to a condition of self-support and maintenance as an able-bodied workman is found * * * on the basis of expert medical opinion to be as complete as it can be made by treatment. * * *' In this context the term has two aspects: (1) that the treatment provided has succeeded in returning the worker to the work force or (2) that further treatment will be unsuccessful in accomplishing that aim and the worker would be considered permanently disabled. The medical evidence must be analyzed and evaluated in terms of the purposes expressed in ORS 656.268(1):

> " 'One purpose of this chapter is to restore the injured workman as soon as possible and as near as possible to a condition of self support and maintenance as an able-bodied workman. * * *'

> "The claimant has the burden of proof to establish by a preponderance of the evidence that his condition is medically stationary. *Brennan v. SAIF,* 11 Or App 530, 504 P2d 142 (1972). Since we are dealing with a medical condition the proof must rest on competent medical evidence. *Dimitroff v. State Ind. Acc. Com.,* *supra.* * * *"

■      In this case, claimant had the burden of proving by a preponderance of the evidence that his condition was not medically stationary prior to November 6, 1978. This must be done by medical evidence. We disagree with the referee's apparent holding that this burden may be carried only by offering a physician's report stating in so many words that claimant is not medically stationary. Medical evidence includes circumstantial as well as direct evidence. On the one hand, there is the report which states that claimant is medically stationary coupled with claimant's treating doctor's awareness of, if not acquiescence in, that judgment. On the other hand, claimant's doctor did not expressly release him for work until November 16, although this fact alone does not dictate the conclusion that, had he considered the matter, he would not have found claimant medically stationary at an earlier date. The inference that claimant's doctor agreed with

SAIF's doctor is undercut by the referral for vocational rehabilitation by SAIF on claimant's doctor's recommendation, which in this case included a progressive weight program arguably aimed at improving claimant's condition.

What this case boils down to in our judgment is whether claimant's referral by SAIF on claimant's doctor's recommendation to the Callahan Center for physical therapy outweighs a statement that claimant was medically stationary as of July 20, 1978. We hold it does.

■  Summarizing, we hold that the evidence establishes that claimant was not medically stationary as of July 20, 1978, and that he was entitled to temporary total disability payments during the period from that date until the final determination order was entered.

Affirmed as modified.