Argued and submitted May 8, reversed June 15, 1981

In the Matter of the Compensation of
Harold O. Petersen, Claimant.

PETERSEN,
*Petitioner,*
*v.*
STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(WCB No. 79-7627, CA 19743)

629 P2d 843

James F. Larson, Prineville, argued the cause for petitioner. With him on the brief was Minturn, Van Voorhees, Larson & Dixon, Prineville.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, argued the cause for respondent. With him on the brief were K. R. Maloney, General Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund Corporation, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

**BUTTLER, P.' J.**

Claimant appeals from an order by the Workers' Compensation Board (Board) reducing an award of permanent total disability made by the referee to 50 percent permanent partial disability for low back injuries.

In August, 1978, at the age of 61, claimant incurred an acute lumbar sacral strain while driving a truck. Claimant did not finish the fifth grade and has worked as a logger and heavy equipment driver all his life. He has never worked inside a mill.

A myelogram performed in November, 1978, revealed a defect at the L4-5 level. Shortly thereafter, a bilateral partial laminectomy was performed with removal of a protruding disc, as well as a bilateral foraminotomy of the L5 nerve roots. The neurosurgeon found claimant to be medically stationary on May 21, 1979. He indicated claimant could not return to his previous type of work and should not do work requiring repetitive bending at the waist, repetitive lifting over 25 pounds or prolonged sitting.

The Field Services Division of the Workers' Compensation Department evaluated claimant in September, 1979, and concluded that "claimant will never be able to work. He is still in great distress. Medically 'Not feasible' to place him." In January, 1980, the neurosurgeon indicated that claimant's physical limitations were the same as they were in May, 1979, and that claimant could do sedentary-type work from a physical standpoint. Orthopedic Consultants examined claimant in January, 1980, and concluded that his condition was stationary, his loss of function "mildly moderate," (although his upper extremities were tremulous) and that he was "vocationally impaired." The doctor writing the report stated:

> "It is unlikely, in our opinion, that he will return to work in view of his age and his type of job skills."

On November 21, 1979, a hearings officer for the Social Security Administration found claimant to be totally disabled. Four days earlier, a vocational counselor for the Employment Division administered aptitude tests to claimant to see if he could qualify for any occupational aptitude patterns or job classifications. He noted that claimant was

able to sit down for only ten minutes at a time. On the motor coordination and finger dexterity tests, claimant scored lower than the first percentile—that is, 99 percent of the adult population would score higher. On manual dexterity, he scored in the second percentile. On general intelligence, verbal, numerical and clerical aptitudes, claimant scored between the 11th and 18th percentiles. Without adjustment for standard error of measurement, claimant qualified for no occupational pattern. With that adjustment, he qualified for three, but the vocational expert testified at the hearing that in none of them could claimant have functioned with his education and physical restrictions. The expert did not pursue trying to find actual employment for claimant. After claimant informed the field services worker that Social Security had awarded him total disability, the worker closed the case, although claimant did not ask the worker either to stop looking for employment prospects or to pursue the matter further.

In response to a hypothetical question regarding the chances for any worker with claimant's aptitudes and restrictions to find gainful employment, the expert testified that they were "exceedingly limited." Except for that visit to the Employment Division's vocational expert, claimant has made no efforts to seek employment.

Claimant testified that he is never without pain in his back. His right thigh and hip feel numb. He finds it necessary to lie down five or six times a day for about half an hour at a time. He has given up gardening, raising chickens and doing housework, except for occasionally washing the dishes and windows. He is no longer able to hunt or fish. He is able to drive only for distances of about a mile; he can ride as a passenger in a car only if he can stop about every 15 miles, get out of the car and straighten up.

The Board, in reducing the disability award, emphasized the fact that the medical evidence alone does not support a finding that claimant is totally disabled. Although that may be true, we agree with the referee that claimant, from a realistic standpoint, is totally foreclosed from the labor market, when one considers his age, education, work history and physical restrictions. *Wilson v. Weyerhaeuser,* 30 Or App 403, 409, 567 P2d 567 (1977). It

would be "futile for claimant to attempt to be employed." *Morris v. Denny's,* 50 Or App 533, 538, 623 P2d 1118 (1981).

ORS 656.206(3)[1] requires "reasonable efforts" to seek employment. Given the expert opinion, which is undisputed by SAIF, that someone with claimant's aptitudes, education and physical restrictions was extremely unlikely to find employment on his own, and the fact that claimant was rejected for job retraining by the Workers' Compensation Department, we find that his lack of effort to do more was not unreasonable under the circumstances.

Reversed.

---

[1] ORS 656.206(3) provides:

"(3) The worker has the burden of proving permanent total disability status and must establish that he is willing to seek regular gainful employment and that he has made reasonable efforts to obtain such employment."