Argued and submitted June 15, affirmed October 5, reconsideration denied October 29, petition for review denied December 9, 1981 (292 Or 232)

In the Matter of the Compensation of
Orry W. Harmon, Claimant.

HARMON,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(WCB No. 80-742, CA A20407)

634 P2d 274

Noreen K. Saltveit, Portland, argued the cause for petitioner. With her on the brief was Merten & Saltveit, Portland.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, General Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund Corporation, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

**ROBERTS, J.**

The most difficult problem in this workers' compensation case has been defining the issue. The claim has been treated variously as an appeal from a determination order pursuant to ORS 656.268(3) and ORS 656.319(2), a claim for aggravation under ORS 656.273(3) and a claim for additional medical services under ORS 656.245(1). SAIF contends in its brief, as it has from the beginning of the case, that the claim is one for aggravation; claimant has consistently maintained that aggravation is not an issue, but that the claim is an appeal from the premature issuance of a determination order. At oral argument, however, SAIF's attorney agreed that, even treating the case as an appeal from a premature determination order, the single issue is whether claimant has met his burden of proving he was not medically stationary at the time the order was issued. We are treating the claim as an appeal from a determination order.[1] We affirm the Workers' Compensation Board's (Board) denial of the claim, although for reasons different from those of the Board.

Claimant, a 28 year-old truck driver, sustained a compensable thoracic, right arm and neck strain on December 18, 1978, while doing heavy lifting at work. His claim was closed by a determination order on May 24, 1979, with payment of temporary total disability through February 11, 1979. In June, 1979, claimant suffered a recurrence of pain and was unable to work. The claim was reopened and closed again by a determination order on October 4, 1979, awarding him temporary total disability payments through August 15, 1979. In November and December, 1979, claimant was treated at University of Oregon Health Sciences Center for the same problem. Further treatment, including psychological, vocational, social work and physical therapy referrals, was recommended. The medical records from

---

[1] We still reserve some doubt that this is the procedural posture in which claimant originally presented his case. His request for a hearing, filed after SAIF denied what it termed his "claim for aggravation," was what appears to be a typewritten form. At the top of the form, in the portion where the claim number and date of injury are inserted to identify the claim, the words "Determination order of:" which would presumably identify the order appealed from, had been deleted, and typed in its place was "Denial letter of: 1/15/80." The denial letter referred to a claim for aggravation.

these visits were sent to SAIF on December 18, 1979, with a notation that claimant wished to reopen his claim. By letter of January 15, 1980, SAIF notified claimant that it would accept responsibility for palliative care under ORS 656.245, but denied his claim for aggravation. On January 24, 1980, claimant filed a request for a hearing.

The referee framed the issues as follows:

. "Claimant has appealed a Determination Order issued on October 4, 1979, granting temporary total disability only. Claimant has also appealed a denial of reopening of the claim issued on January 15, 1980 and a denial of responsibility for medical treatment. The issues are:

"1. Whether claimant's claim should be reopened for additional temporary total disability;
"2. In the alternative, what is the extent of claimant's permanent disability;
"3. Whether SAIF is responsible for claimant's ongoing medical treatment;
"4. Whether claimant is entitled to penalties and attorney fees."

The referee found claimant's continuing problems to be related to the 1978 injury and that, as of November 28, 1979, claimant was not medically stationary and required further treatment. She ordered the claim reopened for payment for temporary total disability from and after November 28, 1979, and for medical treatment received. Claimant was also awarded attorney's fees and a 25 percent penalty for SAIF's unreasonable refusal to pay for medical treatment after agreeing to do so. SAIF appealed. The Board treated the claim as one for aggravation and denied reopening on the ground that claimant had not shown any worsening of his condition. Claimant appeals the denial of the reopening. The Board affirmed the allowance of medical expenses, penalties and attorney fees, and this portion of the order is not appealed from.

■    ORS 656.268(1) provides that a worker's claim shall not be closed nor temporary disability compensation terminated if the worker's condition has not become medically stationary. ORS 656.319(2) allows a hearing on objections to a determination order finding that a worker is medically stationary when the request for the hearing is

filed within one year of the order. Claimant's final determination order in this case was dated October 4, 1979. His request for a hearing was filed January 24, 1980, and was thus timely.

■ "Medically stationary" is defined in ORS 656.005(21) to mean "no further material improvement would reasonably be expected from medical treatment, or the passage of time." The question of whether claimant was medically stationary at the time of the determination order is a matter of medical evidence, which can be "circumstantial" as well as direct. *Austin v. SAIF,* 48 Or App 7, 12, 615 P2d 1188 (1980). We said in *Austin* that claimant's burden is not carried, for instance, only by a physician's report stating in so many words that claimant is not medically stationary. However, in the case before us, all the evidence indicates that claimant's problems in November and December of 1979 were symptomatic of a chronic condition and that, while there was perhaps some slight worsening of his condition, there had been no significant change in his condition since the accident.

The only medical evidence subsequent to closure of claimant's claim is the chart notes sent from the University of Oregon Health Sciences Center to SAIF on December 18, 1979. These notes, dating from November 28, 1979, to December 11, 1979, were apparently sent at SAIF's request. They were accompanied by a form cover letter to that effect, which included an express disclaimer of support for reopening of the claim. Typed in was the notation: "Mr. Harmon-claim #DE 43049 would like to reopen claim. Because we did not see him in 1978 we are unable to make a recommendation."

Because there is no physician's report indicating a need for reopening or that claimant was not, at the time of claim closure, medically stationary, we must determine whether the chart notes, coupled with the initial medical reports from Kaiser Hospital, show *circumstantially* that claimant's condition was not medically stationary as of August 16, 1979. We find they do not. The pertinent medical evidence is summarized as follows:

Following his injury on December 18, 1978, claimant was treated at Kaiser Permanente Hospital and released for work as a truck driving instructor on January 23, 1979. The treating physician by letter to SAIF of April 25, 1979, declared claimant medically stationary as of February 12, 1979. About June 22, 1979, claimant suffered a "recurrence" of cervical strain and was treated again at Kaiser by a different doctor. Treatment was medication, heat and a cervical support collar. The doctor noted no improvement from June 22 to July 27, 1979, and referred claimant to a physiatrist.[2] The physiatrist released claimant for work and found him medically stationary as of August 16, 1979.

Following these medical reports and the determination order of October 4, 1979, the next medical evidence is the chart notes from the Health Sciences Center. There are four entries all by different persons. The notes indicate that on November 28th, claimant said he had not worked in three months. Claimant still experienced numbness in his right hand; his back pain, which was initially sharp and "catching," had become dull and continuous. X-rays and vocational rehabilitation were recommended. Claimant was said to be suffering from "chronic neck pain." He complained that his right arm had "given out" a number of times and felt weak. The examiner's report found his elbow joints stable and the strength in his arms equal. On December 5, "mild degenerative changes" were noted in the radiologist's report, and the examining physician's report stated, "Patient is without change" and diagnosed chronic pain with a psychological component. Therapy, social work referrals and a psychological evaluation were requested. The physical therapy report, dated December 11, 1979, found claimant's thoracic pain "no better or worse than 1 year ago." A home exercise program and swimming were recommended.

The repeated conclusions of claimant's examiners were that his medical condition is chronic and stationary. The treatment prescribed was clearly designed to assist

---

[2] A physiatrist is a physician who specializes in "physical medicine," i.e., a physician who treats with the use of heat, cold, electricity, radiation or other physical means.

claimant in coping with his condition and not to create any material improvement in that condition. The order of the Board denying reopening of claimant's claim is affirmed.

Affirmed.