Argued and submitted September 23, reversed and
remanded with instructions December 30, 1981

In the Matter of the Compensation of
Charles L. Livesay, Claimant.
LIVESAY,
*Petitioner,*
*v.*
STATE ACCIDENT INSURANCE FUND
CORPORATION,
Respondent.

(WCB Case No. 79-10108, CA A21082)

637 P2d 1370

Robert S. Gardner, Corvallis, argued the cause for peti-
tioner. On the brief were J. W. Walton and Ringo, Walton,
Eves & Gardner, P.C., Corvallis.

Darrell E. Bewley, Appellate Counsel, State Accident
Insurance Fund Corporation, Salem, argued the cause and
filed the brief for respondent.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

### WARREN, J.

This is an appeal from a Workers' Compensation Board decision affirming the order of the referee which granted claimant compensation equal to 90 degrees for 60 percent loss of his right leg and 240 degrees for 75 percent unscheduled disability for injury to his left hip and right shoulder. The only issue on appeal is whether claimant is permanently and totally disabled. We review *de novo*. ORS 656.298.

Claimant is 43 years old and has a seventh grade education. He has no special skills or trade and has worked as a timber feller since 1961. He has always been a laborer; he has never held a supervisory position. In 1966, claimant sustained his first industrial injury, to his right knee, resulting in surgical removal of cartilage, for which he was awarded no permanent partial disability. In 1971, he sustained a fracture to his left heel and a weakened left ankle. In 1977, he sustained a fracture of his left knee, which required surgical repair. The current injury occurred in February, 1978, when claimant sustained a fractured left hip, a fractured right knee and an injury to his right shoulder. As a result of his last injury, claimant underwent surgical replacement of his left hip and right knee joint and faces the possible need for replacement of the left knee joint and surgery to his right shoulder.

As a result of his injuries, claimant's activities are greatly restricted. He has difficulty standing and walking, cannot stoop and has no lateral movement. He also has only about 50 percent strength in his right shoulder and limited movement of the shoulder. He clearly cannot return to the type of job he held before his injury.

Claimant received counseling from a vocational nurse at SAIF, was tested by a private vocational consulting firm and was placed at the Willamette Rehabilitation Center for evaluation of his on-the-job limitations. Claimant was found to be highly motivated but severely restricted physically. It was the opinion of his counselors that vocational retraining was not appropriate because of claimant's age, education and work background. Claimant expressed an interest in buying a small restaurant. His wife has experience in the restaurant business, and he felt he could work on a part-time basis.

This possibility was investigated, but it was abandoned when tests showed that claimant did not have the necessary math and bookkeeping skills to operate a business.

Claimant's vocational counselor testified that his physical limitations made it unlikely that he would be able to find a job, because:

> " * * * Any job he had or got would have to be so flexible that he would have to be able to sit as long as he wanted, stand as long as he wanted, be able to come and go pretty much as he pleased with the restrictions of knowing he's only going to be at work two, maximum three days a week and the rest of the week he would be off because he hurt too bad. That kind of a job is difficult to find. * * * "

A rehabilitation coordinator at the Willamette Rehabilitation Center testified that, considering claimant's situation, age, work experience and injuries, she did not think any employment would be available to him, and the area supervisor of the Workers' Compensation Department Field Services Division wrote that claimant could not hold down a full-time job.

In his opinion, the referee stated that claimant had no training which would qualify him for any occupation other than those involving heavy labor, which he was no longer physically able to perform. However, the referee refused to find claimant permanently and totally disabled, because he found "claimant has resources left to him * * * even without vocational help." These resources appear to be claimant's strong desire to be gainfully employed and his interest in the possibility of owning a restaurant. The record shows that claimant has no experience in the restaurant business and was lacking in business skills. Claimant's wife has had experience in the restaurant trade, but her experience is irrelevant to a determination of whether claimant is permanently and totally disabled.

■ "Permanent total disability" and "suitable occupation" are defined by ORS 656.206(1)(a):

> " 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful

and suitable occupation. As used in this section, a suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which he is able to perform after rehabilitation."

Permanent total disability may be based on a combination of medical and non-medical conditions, including age, education, adaptability to non-manual labor and mental capacity, as well as conditions of the labor market. *Morris v. Denny's,* 50 Or App 533, 537, 623 P2d 1118 (1981); *Wilson v. Weyerhaueser,* 30 Or App 403, 567 P2d 567 (1977). Where, from a realistic standpoint, these conditions result in claimant being foreclosed from the labor market, a finding of permanent total disability is appropriate. *Peterson v. SAIF,* 52 Or App 731, 734, 629 P2d 843 (1981).

■      In this case, there is evidence that claimant is not totally physically disabled; however, the opinion of vocational experts is that his prospects for finding gainful employment, if they exist at all, are very limited because of his age, training and capacity. Claimant has made substantial efforts to find some type of work he can perform; he wants to work. There is evidence that it was felt that a determination that claimant was permanently and totally disabled might cause him to lose his motivation to look for work. We do not believe that claimant should be penalized for his spirit and determination. Furthermore, the concern is not what the future may hold, but rather whether claimant is able *at present* to perform a gainful and suitable occupation. In *Gettman v. SAIF,* 289 Or 609, 614, 616 P2d 473 (1980), the claimant was found ineligible for vocational rehabilitation services but was denied permanent total disability because of his potential for retraining. The Supreme Court concluded, as we did in *Leedy v. Knox,* 34 Or App 911, 581 P2d 530 (1980), that denial or deferral of an award of permanent disability cannot await the results of possible future change in employment status, but must be based on conditions as they exist at the time of the award. In *Gettman,* the Supreme Court said:

"ORS 656.206(1)(a) * * * provides that a 'suitable occupation' includes one which the claimant 'is able to perform after rehabilitation.' We conclude that the language of this statute, which speaks in the present tense, precludes cancellation of a permanent total disability award based upon a speculative

future change in employment status. In other words, whether this claimant is permanently totally disabled must be decided upon conditions existing at the time of decision, and his award of compensation for permanent total disability can be reduced only upon a specific finding that the claimant presently is able to perform a gainful and suitable occupation." 289 Or at 614.

There was no finding here that claimant is presently able to perform any gainful and suitable occupation and, so far as we can determine from the record, the only resource left to claimant is his motivation to work despite his disability. Residual motivation to work is not, without the ability to work, salable on the employment market and is not a basis for denial of an award of permanent total disability. We find that claimant is not presently capable of regularly performing work at a gainful and suitable occupation and conclude that he is permanently and totally disabled.

Reversed and remanded with instructions to make an award of permanent total disability.