Argued and submitted July 6, reversed and remanded with instructions
November 28, 1984

In the Matter of the Compensation of
Mike A. Aldrich, Claimant.

ALDRICH,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(WCB No. 81-08607; CA A30179)

691 P2d 923

Marianne Bottini, Portland, argued the cause for petitioner. With her on the brief was Bottini & Bottini, Portland.

Linda DeVries, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Rossman, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Claimant seeks review of the Workers' Compensation Board, claiming that it erred in affirming the referee. He argues that the determination order was issued prematurely, SAIF's denial was improper and he should be awarded penalties and attorney fees for SAIF's denial. We reverse.[1]

Claimant is a 24-year-old man who has a history of problems with his knee. When he was 15, he was diagnosed as having Osgood Schlatter's disease in both legs. Less than a month after the diagnosis, he was found to have no discomfort from the disease and was not limited in his activities. Although no details are in the record, he also apparently injured his knee while wrestling in high school. On approximately June 13, 1979, he twisted it in a waterskiing accident and required medical treatment. He missed no time from work, but was told to take it easy. On June 15, 1979, while finishing concrete on the job, he again twisted the knee; it permanently locked, requiring immediate surgery. Although he was candid with the doctor about his history, and SAIF was fully aware of the earlier skiing injury, SAIF accepted the claim on June 28, 1979. That condition became medically stationary, and claimant was awarded time loss and a five percent scheduled disability.

He returned to work approximately three months after surgery and had no major difficulties with his knee until February, 1981, when he again twisted it at work. On February 27, Dr. Corrigan filed a report in which he released him for work and indicated that claimant was medically stationary but gave no other information. Dr. Pettigrew released him for return to work on March 18, 1981, with a notation that he should be careful about quick moves on the left knee, and indicated that claimant was not medically stationary, the knee was unstable and he needed joint and muscle rehabilitation to keep the knee strong. A determination order was issued on the aggravation claim on April 21, 1981, awarding time loss only.

On May 26, 1981, claimant's left knee grew worse, and he was taken off work. He was released for work again on

---

[1] Because we hold that claimant has a valid aggravation claim which should not have been closed before the surgery, ORS 656.245, for he is clearly entitled to those benefits on his aggravation claim.

June 5, 1981. Dr. Pettigrew's report stated that claimant had suffered a worsening of his condition on May 21, 1981, that he was not medically stationary, that his knee was unstable and that he would not have a full recovery. The doctor said that he could return to his regular work, so long as he was treated two to four times a month. Also in June, 1981, claimant was fitted by Dr. Jones for a derotational brace, which he wore for several months. Dr. Jones stated that, if the brace did not stabilize the knee, surgery would be necessary.

SAIF requested Dr. Norton to review claimant's file. He reported that the necessity for the 1979 surgery did not stem from the on-the-job injury but from earlier preexisting conditions. He further stated that claimant's current knee problem did not result from anything that was missed by Dr. Corrigan at the time of the original surgery but was rather the natural course of ligament tears. Dr. Norton concluded that Osgood Schlatter's disease could be dismissed completely as having no significant effect on claimant's current knee instability.

On August 7, 1981, SAIF issued a denial, stating:

"It is our opinion that your current knee problems are unrelated to your injury of June 15, 1979, and most probably related to conditions which preexisted your injury. Therefore, without waiving other questions of compensability this formal denial is made."

On January 27, 1982, Dr. Carlson surgically repaired a torn lateral meniscus and a ruptured right Achilles tendon. Further surgery may still be necessary. The doctor stated that he had not been aware that claimant had suffered an injury in June 15, 1979, but "in all probability, however, the subsequent knee surgery is in direct relationship to his previous knee injury in terms of injuring his meniscus and probably injuring his anterior cruciate ligament."

■ ■ Claimant first asserts that he was not medically stationary when the determination order of April 21, 1981, was issued, so the order was improper. ORS 656.268. The test for determining whether a claimant is medically stationary is whether "further material improvement would reasonably be expected from medical treatment, or the passage of time." ORS 656.005(17); *Harmon v. SAIF,* 54 Or App 121, 634 P2d 274, *rev den* 292 Or 232 (1981). Claimant's employment status

may be relevant, but it is not determinative of this issue. *Saxton v. Lamb-Weston,* 49 Or App 887, 621 P2d 619 (1980), *rev den* 290 Or 727 (1981).

■ The aggravation for which the determination order was issued occurred in February, 1981. The preponderance of the medical evidence establishes that claimant was not medically stationary at the time the order was issued. This conclusion is consistent with the fact that the doctors were trying through conservative treatment and then the leg brace to stabilize the knee but noted that, if such stability were not maintained, surgery would be necessary. The medical consensus was that stability of the knee, which would be a material improvement of claimant's condition, could eventually be obtained through whatever medical treatment might be necessary. Claimant was not medically stationary on April 21, 1981, and the determination order is therefore invalid. Claimant's aggravation claim is still open, unless it was validly closed by the August 7, 1981, denial.

■ In *Bauman v. SAIF,* 295 Or 788, 670 P2d 1027 (1983), the Supreme Court held that, once an employer has accepted a claim, it cannot later deny the claim in the absence of fraud, misrepresentation or other illegal activity, none of which is alleged in this case. There is no question but that SAIF accepted the claim for the knee condition that resulted in the 1979 surgery. Regardless of causation evidence which may have become available since that time, SAIF is bound by that acceptance. It is also bound by its acceptance of the February, 1981, aggravation claim, which was never validly closed.

■■ The only issue therefore is whether claimant's current condition is separate from that which has already been accepted by SAIF. SAIF argues that it is not denying the same condition, but is merely denying responsibility for the chronic underlying condition.[2] It may be possible for a claimant to have a chronic condition which is temporarily worsened by an on-the-job accident but which eventually returns to the pre-accident condition. Any subsequent worsening might in fact be attributable only to the underlying condition, and a denial

---

[2] SAIF also argues that a June 11, 1981, off-the-job slip from a ladder was an intervening accident. However, no medical evidence supports this point, and we reject it.

would then be proper. That is not the case here. Nothing in any of the medical evidence indicates that claimant's knee ever totally recovered (as distinct from becoming medically stationary) from the condition which required surgery in 1979. Although claimant apparently was basically asymptomatic for a period of time, even Dr. Norton, on whose opinion SAIF relies, states that claimant's current condition is merely the result of the natural post-surgery progression of a tear of the kind claimant suffered. Moreover, claimant had not become medically stationary on the accepted aggravation claim before the issuance of SAIF's denial. It is apparent from SAIF's argument and the medical evidence upon which it relies that, rather than trying to establish that claimant is currently suffering from a separate injury than that which it accepted, it is arguing that the 1979 claim was wrongly accepted in the first place and that the original surgery was actually the result of a chronic disease and not of an on-the-job accident. Under *Bauman,* an employer is barred from making that claim or issuing a denial.

■ This case is similar to *SAIF v. Forrest,* 68 Or App 312, 680 P2d 1031 (1984), in which the claimant had had an off-the-job accident which caused an injury to his left knee. Thereafter, he injured the same knee on the job. The claim was accepted and he was given a disability award, in part because of a seven degree loss of extension in his knee. A year later the claimant underwent surgery, during which it was determined that the loss of extension was due to the earlier injury and not to the on-the-job injury. SAIF denied liability for the surgery. We held that that was improper because, although SAIF had couched its denial as one for a preexisting condition and not as a denial of the on-the-job injury it had already accepted, the effect was to deny surgery for a condition (the loss of extension in the knee) which had already been accepted and for which permanent disability had been awarded. The denial issued by SAIF on August 7, 1981, in this case was also invalid.

SAIF presented no medical or other evidence of any kind indicating that claimant's current condition is not related to the condition for which he had surgery in 1979, which had already been accepted by SAIF. Therefore, it had no reasonable basis for the denial and no reasonable basis for

refusing to pay claimant's medical bills for the second surgery. Penalties and attorney fees must therefore be awarded.

Reversed and remanded for processing of claimant's aggravation claim and a determination of the amount of penalties and attorney fees.