TRANSPORT INDEMNITY COMPANY, Petitioner, v. IN-
DUSTRIAL ACCIDENT COMMISSION and JAMES
E. COOPER, Respondents.

Mullen & Filippi and John W. Moore for Petitioner.

Everett A. Corten, Daniel C. Murphy and Emily B. Johnson for Respondents.

WOOD (Fred B.), J.— █ The employer's insurance carrier claims the evidence does not support the respondent commission's finding that the employee's injury resulted in temporary total disability.

The employee, a truck driver, sustained an injury to his lower back on May 10, 1956, when attempting to lift the tailgate of his truck preparatory to picking up a load of gravel. He had been hauling sacks of cement with the tailgate down.

He received compensation and medical treatment until November, and, in December, 1956, applied to the commission for adjustment of his claim. At the hearing in March, 1957, he testified that he had not returned to work yet. He was put first into a cast, then into a truss belt for a while and then into a chairback brace which he was still wearing pursuant to Dr. Jaskiewicz's instructions. The doctor told him he could return to light duty, that he could drive a truck. He went

and drove with a friend of his three or four times (the last time was in December) but each time he rode on the truck he would get a backache and quite a bit of discomfort. After two to three hours he would have to get out of the truck in order to get comfort.

He had been trying to locate other jobs but had not been able to find them as yet. He went to his employer, Pacific Coast Aggregates, to see if he could get a job when released for light work but they would not put him back to work at light work because they did not have it. Asked if there is no work available right now, he said "right now there happens to be 350 men sitting in the union hall."

He felt he could perform a little more than light work but not that he could go back and lift those hundred pounds bags of cement all day, the kind of work he was doing when the injury occurred. He was unable to bend over to the floor to pick up the sacks. Due to the pain at the belt line and the catch in the back he was unable to bend clear over.

He said he felt he could drive a dump truck now; dump truck work is light when one is hauling nothing but gravels or fills.

There was medical testimony that he could now do light work. On September 17, 1956, Dr. Jaskiewicz was of the opinion that the employee could perform "light work" commencing September 1 and "regular work" commencing October 1. October 31 this doctor reported that the employee's return to work was delayed because of a recent accident (nonindustrial in origin) but that he was then "available for light work." On November 29 Dr. Jaskiewicz reported that the employee was "able to return to his regular work," but the doctor expressed the desire that the employee be examined by another orthopedist because he "would rather have another opinion before such determination is made." Accordingly, Dr. Eisenberg examined the employee on January 7, 1957. He expressed the opinion that the employee could do a "very light type of work, if such were available." Dr. Walker made an examination on January 4 and reported that the employee "could be gainfully employed" but should not "undertake any type of heavy work which would involve excessive stooping, bending or lifting of objects over 75 pounds in weight."

Of this evidence, the referee, in his report recommending denial of the carrier's petition for reconsideration, said: "I believe petitioner's contention that the finding of temporary

total disability is contrary to all of the evidence is untrue. On the contrary, the medical reports indicate applicant is still wearing a chairback brace and is unable to return to his regular employment, handling 100# sacks of cement in loading and unloading his truck. The fact that he states his willingness to try lighter work is not proof that he would be able to do it. The employer has not offered him any work and he has been unable to find any.'' Those are inferences a factfinder reasonably could draw. We see no basis for substituting other inferences for those which the factfinders in this case have drawn.

As to whether dump truck driving was ''light work'' of the type contemplated by the doctors, the commission in its answer to the petition says: ''It is a rare, almost nonexistent, job as a truck driver that does not require the driver to lift, stoop, carry, load and unload, because, of course, the purpose of a truck is to transport material from one place to another which involves getting material on and taking it off the truck. This is the work of the driver as a general rule. Applicant stated that he would be willing to try to drive a dump truck if the dump truck were hauling gravel and fills. This is 'light work.' Dump trucks carry things other than gravel and fills such as cement bags which the driver is to load and unload. (This is the work he was doing at the time of his injury.)'' That does not impress us as an unwarranted view of the situation. In this very case, it would appear, the employee had been driving a dump truck to carry heavy sacks of cement and he was about to use it for the hauling of gravel. In the face of that can this court take judicial notice, as the carrier would have us do, that there is in fact a well defined class of dump truck drivers who are never called upon to bend low or lift heavy articles? In the face of this record we perceive no basis for ''refreshing the judicial recollection'' to any such effect.

The carrier argues that the very fact that 350 truck drivers are waiting for jobs, at the union hall, demonstrates that the employee's inability to get ''light work'' stems from economic conditions, not from his back injury. As to that, the commission in its answer significantly comments: ''There are about 350 truck drivers seeking work in Oakland. Petitioner has apparently misunderstood applicant's testimony in this regard. There are not 350 dump truck drivers seeking em-

ployment driving dump trucks but 350 truck drivers seeking employment driving various types of trucks.''

Both parties agree that California follows the ''odd-lot'' doctrine, enunciated in *Meyers* v. *Industrial Acc. Com.*, 39 Cal.App.2d 665 [103 P.2d 1025], and that where the capacities left to the workman fit him for special uses only the employer has the burden of showing that suitable work is available for him. They differ on the question whether the evidence here would warrant a finding that this employee is temporarily fitted for special uses only.

In support of the view that this employee is fitted for special uses only, the commission in its answer says: ''Is applicant an 'odd-lot'? He could probably drive a dump truck hauling gravel and fills. He could not drive a dump truck carrying anything else. He could not replace a driver who is absent in order to make an urgent delivery, if any loading or unloading were involved. He could never aid in loading or unloading any trucks. He would have to stop driving at frequent intervals so that he could get out and move around. It would be an unusual employer indeed who would be willing to gamble on the applicant when there are 350 men available who could do all of these jobs. His own former employers (who use dump trucks) would not take him back. They can't use him on their dump trucks. Applicant's capacities for work fit him for special purposes only and the employer has not shown any suitable work to be available.''

We conclude that the evidence supports the finding of ''temporary total disability,'' and that ''consideration . . . [has been] given to the ability of the injured employee to compete in an open labor market.'' (Lab. Code, § 4653.)

The finding of the ultimate fact of ''temporary total disability'' is sufficient without also finding the probative facts upon which it is based. (Lab. Code, § 5953; *Lumbermen's Mut. Cas. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 492, 498-499 [175 P.2d 823], and cases there cited.) This is quite different from *California Comp. Ins. Co.* v. *Industrial Acc. Com.*, 128 Cal.App.2d 797 [276 P.2d 148, 277 P.2d 442], where the commission had found temporary *partial* (not total) disability. That finding immediately brought into play the provisions of sections 4654 and 4657 of the Labor Code which require computation of wage losses during the period of partial disability.

The carrier also claims that the award for further

medical treatment was improper because assertedly based upon the report of a physician who had the improper history. This report did not indicate that Dr. Walker was aware of and gave consideration to the history of a nonindustrial injury which the employee incurred November 5, 1955, some six months prior to the injury here involved.

Toward the close of the hearing held on March 8, the carrier's counsel requested continuance for further examination by Dr. Walker to enable the doctor to give consideration to the injury of November 5, 1955. The referee denied this request upon the ground that the carrier, though informed of this prior injury, did not convey this information to Dr. Walker when it requested the doctor to make the examination and had received the Walker report several weeks before the date of the hearing.

In this connection the carrier additionally alludes to the fact that the forepart of the hearing dealt with a proposed compromise and settlement and that the referee somewhat narrowly restricted the scope of the hearing to the consideration of that question, saying that "if the compromise and release is not going to be approved, you have an opportunity for a further hearing and you can put on whatever evidence you want." Counsel did not accept that tender. Instead, he said: "I did want to avoid the further proceedings." In response, the referee reopened the case and the direct examination of the employee started anew. Under such circumstances the carrier is in no position to complain. Moreover, an early medical report in possession of the carrier before Dr. Walker's examination, specifically mentioned the auto accident of November, 1955, and indicated that its results had already cleared up.

The award is affirmed.

Peters, P. J., and Bray, J., concurred.