NORTHWEST CARRIERS, INC. and
State Insurance Fund, Petitioners,

v.

INDUSTRIAL COMMISSION OF UTAH
SECOND INJURY FUND, and Herbert
Merz, Respondents.

Melvin E. INGERSOLL and State
Insurance Fund, Petitioners,

v.

Richard M. CAMP, Second Injury Fund
and Industrial Commission of Utah,
Respondents.

Nos. 17170, 17245.

Supreme Court of Utah.

Dec. 1, 1981.

James R. Black, Salt Lake City, for Northwest Carriers and Ingersoll and State Ins. Fund.

David L. Wilkinson, Atty. Gen., Frank V. Nelson, Asst. Atty. Gen., Salt Lake City, for Industrial Commission.

Harold Stephens, Salt Lake City, for Camp.

STEWART, Justice:

In No. 17170, Northwest Carriers, Inc. and its workmen's compensation insurance carrier, the State Insurance Fund, petitioned the Industrial Commission for reimbursement from the Second Injury Fund for benefits paid to Herbert Merz, an injured worker. In case No. 17245 Melvin Ingersoll and his workmen's compensation insurance carrier, the State Insurance Fund, petitioned for similar relief regarding Richard Camp. For practical purposes, both cases are actions by the State Insurance Fund against the Second Injury Fund. The two cases have been consolidated.

On this writ of review, petitioners challenge the amount of reimbursement the Industrial Commission awarded from the Second Injury Fund to the State Insurance Fund for total disability benefits paid the two injured workers during a 312-week period as provided by Utah Code Ann., 1953, §§ 35–1–65 and 35–1–67.[1] The issue is what proportion of total disability benefits attributable to nonphysical, unemployability factors such as advanced age, limited education, and lack of training are contemplated by Utah Code Ann., 1953, § 35–1–69 to be paid by an employer, or his insurance carrier, and the Second Injury Fund, respectively. Both the Insurance Fund and the Second Injury Fund deny all liability for benefits attributable to nonphysical unemployability factors.

Richard M. Camp, the injured employee in No. 17245, suffered an on-the-job injury while employed by Ingersoll Construction Company on August 6, 1975. He fell sixteen feet from scaffolding after a brick archway gave way. Camp suffered physical and psychiatric complications from conditions that predated the industrial accident. The Commission found that he suffered a 68% loss of bodily function, 65% attributable to the industrial accident and 3% attributable to an earlier impairment. The Commission also found Camp permanently and totally disabled because of his unsuccessful rehabilitation, his advanced age, lack of formal education beyond the fourth grade, and the limited scope of his training and skills, and ordered the Second Injury Fund to provide lifetime payments of $131.75 per week.

Although the Commission ordered the Second Injury Fund to reimburse the State Insurance Fund a percentage of future medical expenses, no reimbursement was awarded for disability payments attributable to the nonphysical, unemployability factors. Appealing this order, the State Insurance Fund argues it should only be held responsible for 68% of Camp's disability and medical payments and therefore contends that it should be reimbursed for the remaining 32% of those expenses from the Second Injury Fund.[2]

Herbert Merz, the injured employee in No. 17170, injured his back on August 11, 1974, in the course of his employment by plaintiff Northwest Carriers, Inc. A medical panel found that he suffered a 55% whole man physical impairment, 40% due to the industrial injury of August 11, 1974, and 15% resulting from a prior accidental injury. On May 8, 1980, the Industrial Commission found Merz 100% permanently disabled because his physical impairment, his advanced age, and poor education made

---

1. In awarding partial reimbursement, the Industrial Commission's Order in No. 17245 states that the State Insurance Fund paid Camp *permanent* total disability benefits whereas the Order in No. 17170 shows that the State Insurance Fund paid Merz for *temporary* total disability.

2. In calculating its liability for Camp's disability benefits, the State Insurance Fund does not appear to have claimed reimbursement for the 3% preexisting impairment, which was included in the 68% impairment.

rehabilitation unlikely.[3] The State Insurance Fund paid total disability benefits for the maximum statutory period of 312 weeks, after which the Commission ordered the Second Injury Fund to pay Merz $85.33 per week as long as he lives or until further order of the Commission.

Having paid 100% of the temporary total disability benefits, the State Insurance Fund petitioned the Commission for an order of reimbursement from the Second Injury Fund for 60% of the amount paid Merz on the ground that its responsibility was limited to the industrial accident impairment only and did not include that portion of the disability resulting from the preexisting condition and the unemployability factors. The Commission ruled that the State Insurance Fund should be reimbursed only for the benefits attributable to the preexisting injury, but not for the nonphysical unemployability factors. It accordingly awarded the Insurance Fund 15% of the expenses it had incurred, rather than the 60% sought. The effect of this ruling was that 45% of the temporary total disability attributable to the nonphysical factors was to be paid by the employer's insurance carrier, the State Insurance Fund.

Petitioners in both cases appeal the Commission's failure to require the Second Injury Fund to reimburse the State Insurance Fund for *all* the benefits attributable to the nonphysical unemployability factors for the 312-week statutory period.

Section 35–1–69 provides the basis for compensation from the Second Injury Fund (or "Special Fund") for combined injuries resulting in permanent incapacity:

> Combined injuries resulting in permanent incapacity—Basis of compensation—Special fund—Training of employee.—(1) *If any employee who has previously incurred a permanent incapacity by accidental injury, disease, or congenital causes, sustains an industrial injury for which compensation and medical care is provided by this title that results in permanent incapacity* which is substantially greater than he would have incurred if he had not had the pre-existing incapacity, *compensation and medical care, ... shall be awarded on the basis of the combined injuries, but the liability of the employer for such compensation and medical care shall be for the industrial injury only and the remainder shall be paid out of the special fund provided for in section 35–1–68(1) hereinafter referred to as the "special fund."*

A medical panel having the qualifications of the medical panel set forth in section 35–2–56, shall review all medical aspects of the case and determine first, the total permanent physical impairment

---

**3.** The Industrial Commission, in its conclusions of law, explained the difference between impairment and disability:

> The legal issue posed by this case may be better understood by some comments with respect to the difference between impairment and disability. One of the best and most widely accepted definitions differentiating between these two terms is found in the American Medical Association's *Guides to the Evaluation of Permanent Impairment* which sets forth the following definitions.
> (3) EVALUATION (RATING) OF PERMANENT IMPAIRMENT.—This is a function that physicians alone are competent to perform. Evaluation of permanent impairment defines the scope of medical responsibility and therefore represents the physician's role in the evaluation of permanent disability. Evaluation of permanent impairment is an appraisal of the nature and extent of the patient's illness or injury as it affects his personal efficiency in one or more of the

activities of daily living. These activities are self-care, communication, normal living postures, ambulation, elevation, traveling, and nonspecialized hand activities.
> (4) EVALUATION (RATING) OF PERMANENT DISABILITY.—In the last analysis, this is an administrative and not solely a medical responsibility and function. Evaluation of permanent disability is an appraisal of the patient's present and future ability to engage in gainful activity as it is affected by such diverse factors as age, sex, education, economic and social environment, in addition to the definite medical factor—permanent impairment. The first group of factors has proved extremely difficult to measure. For this reason, permanent impairment is in fact the sole or real criterion of permanent disability far more often than is readily acknowledged. However, in actual practice the final determination of permanent disability is an administrative decision as to the patient's entitlement.

resulting from all causes and conditions including the industrial injury; second, the percentage of permanent physical impairment attributable to the industrial injury; and third, the percentage of permanent physical impairment attributable to previously existing conditions whether due to accidental injury, disease or congenital causes. *The industrial commission shall then assess the liability for compensation and medical care to the employer on the basis of the percentage of permanent physical impairment attributable to the industrial injury only and the remainder shall be payable out of the said special fund.* Amounts, if any, which have been paid by the employer in excess of the portion attributable to the said industrial injury shall be reimbursed to the employer out of said special fund. [Emphasis added.]

The State Insurance Fund focuses entirely on the statutory language which provides that the employer (or its insurance carrier) shall be liable for "the percentage of permanent physical impairment attributable to the industrial injury only and the remainder shall be payable out of the said special fund." Based on that language, the Insurance Fund denies liability for permanent disability resulting from lack of education, job availability, level of intelligence, and preexisting physical impairment. The Commission and the Second Injury Fund rely on different language in the above statutory provision, and assert that the limited education and skills of the injured workers do not qualify as "accidental injuries, disease, or congenital causes" and are not proper factors in determining the Second Injury Fund's liability.

■ Neither interpretation, however, is harmonious with the remedial purposes of worker's compensation statutes and the particular purpose of the Second Injury Fund. The purpose of the Second Injury Fund is to encourage employers to employ handicapped workers by excluding the employer from financial responsibility for a preexisting disability, *McPhie v. United States Steel Corp.*, Utah, 551 P.2d 504

(1976), including an impairment resulting from a preexisting psychological condition, *Intermountain Health Care, Inc. v. Ortega*, Utah, 562 P.2d 617 (1979). A disabled employee may receive full compensation for a disability resulting from an industrial accident, but the employer, or his insurance carrier, pays only for a disability attributable to an accidental injury occurring during that particular employment. *Intermountain Smelting Corp. v. Capitano*, Utah, 610 P.2d 334 (1980); *White v. Industrial Commission*, Utah, 604 P.2d 478 (1979). Larson, *Workman's Compensation Law*, Vol. 2, § 5931.

■ Factors extrinsic to an industrial injury, such as age, mental abilities, prior training, and job market, are appropriate factors in determining an injured employee's earning power and degree of disability. On this point the parties are agreed. Indeed, this Court has previously relied on one or more of these factors in determining the degree of disability. *United Park City Mines Co. v. Prescott*, 15 Utah 2d 410, 393 P.2d 800 (1964); *Utah Fuel Co. v. Industrial Comm.*, 76 Utah 141, 287 P. 931 (1930). See also *Sims v. Industrial Commission*, 10 Ariz. App. 574, 460 P.2d 1003 (1969); *Snead v. Adams Construction Co.*, 72 N.M. 94, 380 P.2d 836 (1963).

■ In workmen's compensation law, a disability is an "impairment of earning capacity." *Marhoffer v. Marhoffer*, 220 N.Y. 543, 116 N.E. 379 (1917); *Moses v. National Union Coal Mining Co.*, 194 Iowa 819, 184 N.W. 746, 747 (1921). Once an employer becomes liable for a physical impairment, it is consistent with the policy of workmen's compensation law to hold the employer responsible for a portion of the resulting impairment of earning power, considering the employee's age, training, and mental capacities. See *Utah Fuel Co. v. Industrial Comm., supra; Sims v. Industrial Commission, supra*; 99 C.J.S. Workmen's Compensation, § 170.

■ Based on the purpose and language of the Workmen's Compensation Act, we hold that the Second Injury Fund's respon-

sibility for disability benefits is not limited to Merz's 15% preexisting physical impairment. Rather, the Second Injury Fund should bear the cost of disability payments to the extent that the 15% preexisting impairment, acting in combination with Merz's age, mental abilities and lack of rehabilitative prospects, contributed to his total disability. Thus a proper assessment of responsibility for nonphysical factors should be determined by the proportion which the preexisting physical impairment bears to the additional physical impairment resulting from the instant industrial accident, that is, $^{15}/_{55}$ths. Therefore, the Second Injury Fund is responsible not for 15%, but $^{15}/_{55}$ths or 27%, of the total disability.

As to Camp, the 3% preexisting impairment added to the 65% impairment incurred in the industrial accident resulted in a 68%[4] loss of bodily function. Applying the above reasoning, the Second Injury Fund is therefore responsible for $^{3}/_{68}$ths of Camp's disability benefits.

This result best fulfills the purpose of the Second Injury Fund. As recently explained in *Intermountain Smelting Corp. v. Capitano,* Utah, 610 P.2d 334, 337 (1980), the Fund is, "to make it easier for persons who have previous injuries or disabilities to obtain employment ... by conferring a benefit upon employers by minimizing the risk to them in hiring such persons."

Reversed and remanded to the Industrial Commission for an apportionment of damages in accordance with this opinion.

HALL, C. J., and HOWE and OAKS, JJ., concur.

MAUGHAN, J., heard the arguments, but died before the opinion was filed.

---

**4.** The Second Injury Fund questions whether the 3% preexisting condition combined with the 65% later injury causes a "substantially greater" permanent incapacity as required under § 35-1-69. However, *Intermountain Health Care, Inc. v. Ortega,* Utah, 562 P.2d 617 (1977) held that the preexisting condition need not be greater than the later injury to cause a "substantially greater" permanent incapacity and that the preexisting injury need only be a "definite and measurable portion of the causation of the disability." *Id.* at 619. That requirement is met here.