**James W. SMITH, Appellee,**

v.

**ASARCO INCORPORATED, Appellant.**

Supreme Court of Tennessee,
at Knoxville.

March 1, 1982.

Arthur G. Seymour, Jr., W. Kyle Carpenter, Frantz, McConnell & Seymour, Knoxville, for appellant.

W. Buford Lewallen and David L. Buick, Knoxville, for appellee.

OPINION

COOPER, Justice.

This is an appeal by an employer from an award of worker's compensation benefits to

an employee found to be totally and permanently disabled as the result of silicosis.

There is no question but that appellee now has silicosis and is permanently disabled to some degree. Neither is there any question but that the silicosis is the result of appellee working underground in the zinc mines from 1970 until his retirement on March 31, 1979. However, appellant insists there is no material evidence to support the chancellor's finding that appellee was injuriously exposed to the hazard of silicosis while working for it, or to support the chancellor's findings that appellee is totally and permanently disabled from silicosis. Appellant also insists that appellee's claim for worker's compensation benefits undisputably is barred by the one-year statute of limitations. On review of the record, we find material evidence to support the chancellor's finding on each of the issues and affirm the award of benefits to appellee.

Appellee worked thirty-one years for the American Zinc Company, the last fifteen years in the Young Mine. In November, 1971, appellant purchased the zinc mines from American Zinc. After the purchase, appellee continued to work for appellant as a transit loader operator in the Young Mine. The transloader is a front end loader used to move ore underground from a muck pile to a mill hole, where it is dumped. Appellee testified that the movement of the transloader across the muck pile, the picking up of the loads and the travelling over the mine floor raised large quantities of dust, which he would breathe. Appellee wore a respirator, at least in his later years in the mines. However, according to appellee, the respirator would pull away from his face whenever he turned his head and that such a movement was necessary in driving the transloader.

Records were introduced which show, and it is generally conceded, that there is free silica in the air in the Young Mine. Free silica breathed into the lungs is the cause of silicosis. Appellant makes the argument that appellee was not exposed to free silica

in amounts sufficient to be injurious to his health in the period of his employment by ASARCO, citing the results of tests conducted in 1976 by the Mining Enforcement and Safety Administration, and also the testimony of their environmental engineer, Dr. Robert D. Putnam. Dr. Putnam's testimony was based on the test results and on his visits to the mine after 1976. Implicit in appellant's argument is the position that appellee's silicosis is the result of work conditions in the mine when it was operated by American Zinc. This may be and probably is true under the evidence, but it should be borne in mind that it is the employer in whose employment, appellee was last injuriously exposed to the hazards of the disease of silicosis that is liable for payment of worker's compensation benefits. T.C.A. § 50–1106. On this issue, the evidence shows that the lack of needed ventilation in the Young Mine that existed during the time it was operated by American Zinc continued to exist for two to three years after the mine was purchased by ASARCO. While Harold F. Thompson, ASARCO's safety engineer, expressed the opinion that appellee could not get silicosis in the Young Mine "with our ventilation like it is now," he also had the following to say:

Q. Since ASARCO took over this mine, the Young Mine where this man worked, what has been done out there to improve the ventilation?

A. Two ventilation holes have been drilled, fans put on them. We also have better secondary ventilation.

Q. And that was something that needed to be done, I take it?

A. Yes sir, it sure did.

Q. How soon after they started operating ASARCO, now, the Young Mine, was that effectuated?

A. Two or three years.

Q. It took two or three years to do it?

A. Well, it was done within that time.

We think the proof of the presence of free silica in the mine air and the inade-

quate ventilation in the Young Mine for two or three years after ASARCO took over justified the chancellor's finding that appellee was last injuriously exposed to the hazards of silicosis while working for ASARCO. Under T.C.A. § 50–1106, ASARCO is liable for payment of all worker's compensation benefits due appellee for his disability due to silicosis.

■ Dr. Swann testified that appellee is "totally and permanently disabled of his usual occupation of underground zinc mining. Also for any other job that entails strenuous physical exertion, as I said manual labor, and for any employment that involves exposure to smoke dust or fumes." According to Dr. Swann, appellee can do sedentary work in a clean atmosphere if such a job were available. The record shows however, that Mr. Smith is now sixty-five years of age, has a sixth grade education, and that his work experience is confined to the mines. Considering these factors, the chancellor concluded that for all practical purposes appellee is totally and permanently disabled from working. We think the evidence supports his conclusion.

In the remaining assignment of error, appellant insists that the action brought by appellee is barred by the one-year statute of limitations set forth in T.C.A. § 50–1108. That section provides that:

> The right to compensation for occupational disease shall be forever barred unless suit therefor is commenced within one year after the beginning of the incapacity for work resulting from an occupational disease.

■ The statute of limitations does not begin to run, however, until the employee knows, or should know in the exercise of reasonable caution, that he has an occupational disease, and that it has injuriously affected his capacity to work to a degree amounting to a compensable disability. See Consolidated Coal Co. v. Brown, 225 Tenn. 572, 474 S.W.2d 416 (1971); Tennessee Products & Chem. Corp. v. Reeves, 220 Tenn. 148, 415 S.W.2d 118 (1967); A. C. Lawrence Leather Co. v. Britt, 220 Tenn. 444, 414 S.W.2d 830, 418 S.W.2d 660 (1967); Adams v. American Zinc Co., 205 Tenn. 189, 326 S.W.2d 425 (1959).

Appellant insists that appellee knew or should have known, as early as 1966, that he had silicosis. Appellant further reasons that this knowledge, coupled with appellee's later shortness of breath on exertion, put appellee on notice he was incapacitated as the result of silicosis and triggered the running of the statute of limitations.

American Zinc and ASARCO had a policy that when an employee was off from work thirty days or more, the employee had to undergo a physical examination by a physician chosen by the company and be certified to be in good health before he could return to work. Appellee underwent such an examination on May 3, 1966, and was cleared to return to his employment. However, the completed physical examination record, the so-called "blue card," furnished the company by the examining physician bore the notation that x-rays of appellee's lungs were "clear except silicosis."

Appellee denied being told the 1966 x-ray results and there is no evidence in the record to the contrary. Furthermore, later physical examinations of appellee contain no mention of silicosis, but show appellee's lungs to be clear. The last such report, the report of Dr. William McGhee in March, 1977, shows appellee's "Lungs: Hyperresonant. Clear." At that time appellee did have some "Mild dyspnea on exertion," but there is nothing in the report to indicate the cause or to indicate that it was in any way disabling. Appellee testified that he believed his shortness of breath to be due to his smoking and to smoke and dust in the mines.

Appellee continued to work regularly until his retirement on March 31, 1979. His retirement was due, at least in part, to his shortness of breath and to his feeling of tiredness at the end of the workday. Appellant took no steps to learn whether there

was a medical cause of his shortness of breath until January 28, 1980, when he went to Dr. William K. Swann, a thoracic specialist. Dr. Swann found that appellee was suffering from silicosis, and that it was due to his work environment.

Appellant argues that in the exercise of reasonable caution, appellee should have gone to Dr. Swann earlier and that he should be charged with what he would have learned. We cannot accept this argument under the circumstances of this case. As heretofore noted, appellee is a person of very limited education. Further, he had shortness of breath in 1977 when there was no evidence that he had silicosis, at least the physician who examined him found no evidence of it. We would be loathe to require him to move more expeditiously than he did to learn the cause of his shortness of breath or to attribute to him knowledge that he had an occupational disease until it was diagnosed by Dr. Swann.

■ Under these circumstances, the chancellor concluded that appellee did not know or have reason to know that he had silicosis until he was so informed by Dr. Swann, and that he acted as a reasonable person under the circumstances. We think the evidence supports that finding.

The decree of the chancellor is affirmed. Costs incident to the appeal are adjudged against appellant and its surety.

HARBISON, C. J., and FONES, BROCK, and DROWOTA, JJ., concur.