Nolan W. MARSHALL, Plaintiff,

v.

The INDUSTRIAL COMMISSION OF the STATE OF UTAH, Emery Mining Co., (Employer), and/or the State Insurance Fund of Utah, and the Second Injury Fund, Defendants.

No. 19153.

Supreme Court of Utah.

April 5, 1984.

Virginus Dabney, Salt Lake City, for plaintiff.

David L. Wilkinson, Atty. Gen., Salt Lake City, for Indus. Com'n.

Gilbert A. Martinez, Salt Lake City, for Second Injury Fund.

James R. Black, Salt Lake City, for State Ins. Fund.

DURHAM, Justice:

This case is a writ of review from the Industrial Commission of the State of Utah. The appellant, Nolan W. Marshall, was employed by the defendant, Emery Mining Company, as a maintenance mechanic in a coal mine. On January 25, 1980, the appellant was leaving the mine in a minetrip, which is a trailer with wooden seats pulled by a tractor. The minetrip rolled over a large lump of coal and the plaintiff was bounced up and then down on the seat, injuring his back. The appellant sought medical treatment on January 28, receiving medication for pain. He attempted physical therapy, but discontinued the treatment because of additional pain. During this time the appellant continued to work, but stopped in early March. On March 17, 1980, the appellant underwent surgery, a two-space lumbar laminectomy, after a diagnosis of acute lumbar disc. The operation was successful in reducing the appellant's pain, but in July the appellant's doctor noted he was still in discomfort and recommended the appellant not return to mine work. The appellant was then 67 years old.

The appellant received temporary total disability payments from March 1, 1980, to November 14, 1980. On July 9, 1982, the appellant was notified that his application for rehabilitation training was denied by the Division of Rehabilitation Services because there was no "reasonable expectation that vocational rehabilitation services may benefit the individual in terms of employability." In October 1982, a medical panel reviewed the appellant's file and determined that he had sustained a 10% permanent physical impairment as a result of the accident on January 25, 1980. The appel-lant had some previous physical impairment, and his combined impairment totaled 26%. The defendant State Insurance Fund is liable for 10% of that rating; the defendant Second Injury Fund is responsible for the remaining 16%. The findings of the medical panel were adopted by the administrative law judge, who denied permanent total disability status, but awarded workmen's compensation benefits for the January 25, 1980 injury. The findings of fact stated that "it appears to the Administrative Law Judge that [the appellant's] prime reason for being unemployed at the present time is age rather than physical impairment." The defendant Industrial Commission affirmed the order of the administrative law judge. The appellant seeks reversal of the ruling and a determination that he is entitled to permanent total disability benefits.

In his brief the appellant asserts that the Industrial Commission erred in denying him permanent total disability benefits because of his age. He argues that the permanent total disability statute, U.C.A., 1953, § 35-1-67 (Supp.1983), does not require his physical impairment to be the primary factor in his disability. The defendants cannot point to a statutory requirement in rebuttal, but argue that case law establishes a pattern of a minimum percentage of loss of bodily function necessary to support a decree of permanent total disability. The defendants cite cases affirming denials of benefits to employees whose percentage of disability was greater than the appellant's and conclude that a 26% impairment is insufficient for a determination of permanent total disability. Furthermore, the defendants allege the evidence shows that the appellant's January 1980 injury had little affect on his employability and that his decision to retire was voluntary.

At the outset, we note that the purpose of the worker's compensation acts is "to secure workmen ... against becoming objects of charity, by making reasonable compensation for calamities incidental

to the employment ...." *Henrie v. Rocky Mountain Packing Corp.*, 113 Utah 415, 427, 196 P.2d 487, 493 (1948). This compensation is not in the form of damages for injury, as in a tort action, but in the form of payments to compensate for the *loss of employability* resulting from the injury. *See, e.g., Northwest Carriers v. Industrial Commission*, Utah, 639 P.2d 138 (1981); 2 Larson, The Law of Workmen's Compensation § 57.11 (1983). Thus, the Utah worker's compensation statutes key the amount of the weekly payment not merely to the medical nature of the injury, but to a percentage of the worker's average weekly wages, reflecting the economic impact of the injury on the particular individual. *See* U.C.A., 1953, §§ 35-1-66, -67 (Supp.1983). With regard to permanent total disability claims, this Court has stated:

> [A] workman may be found totally disabled if by reason of the disability resulting from his injury *he cannot perform work* of the general character he was performing when injured, or any other work which a man of his capabilities may be able to do or to learn to do ....

*United Park City Mines Company v. Prescott*, 15 Utah 2d 410, 412, 393 P.2d 800, 801–02 (1964) (emphasis added) (footnote omitted). Disability is the loss of ability to earn. *See, e.g., Ashley v. Blue Bell Inc.*, Ala.Civ.App., 401 So.2d 112 (1981); *Smith v. Carolina Footwear, Inc.*, 50 N.C.App. 460, 274 S.E.2d 386 (1981). Confusion occurs when the word "disability" is used to describe a medical condition more properly referred to as "impairment" or "physical impairment." *See Northwest Carriers v. Industrial Commission, supra,* at 140 n. 3. For example, it would have been more accurate if the above quotation had read: "[A] workman may be found totally disabled if by reason of the *impairment* resulting from his injury he cannot perform work." However, an undisputed physical impairment may not result in a disability. *See, e.g., Matthews v. Industrial Commission*, Colo.App., 627 P.2d 1123 (1980) (when a loss of taste and smell does not affect employability, there can be no award for disability); *Tafoya v. Leonard Tire Co.*, 94 N.M. 716, 616 P.2d 429 (N.M.App.1980) (nondisabling pain is not compensable because physical impairment is not the same thing as disability); *Winn Dixie Stores, Inc. v. Linthicum*, Fla.App., 376 So.2d 909 (1979) (a lump on the side resulting from a work-related injury did not diminish the claimant's earning capacity and thus an award of disability benefits was improper).

■ Disability is evaluated not in the abstract, but in terms of the specific individual who has suffered a work-related injury. An injury to a hand would not cause the same degree of disability in a teacher, for example, as it would in an electrician. Thus, in assessing the loss of earning capacity, a constellation of factors must be considered, only one of which is the physical impairment. Other factors are age, education, training and mental capacity. *See Northwest Carriers v. Industrial Commission, supra,* at 141; *Morrison-Knudsen Const. Co. v. Industrial Commission*, 18 Utah 2d 390, 424 P.2d 138 (1967). It is the unique configuration of these factors that together will determine the impact of the impairment on the individual's earning capacity.

■ A few examples illustrate why this is so. Consider a 25-year-old court reporter who suffers a 20% hearing loss in a work-related accident. His total physical impairment is slight, but he is now unemployable in the profession for which he was trained. However, at 25 and in otherwise good health, he is an excellent candidate for rehabilitation and retraining. He returns to college and several years later is able to begin a new career in a different field. The Commission could reasonably find a temporary total disability followed by a permanent partial disability. On the other hand, if the court reporter had been 60 when his hearing impairment occurred, his prospects for retraining would not be favorable. Depending on his health, mental capacity and other experience, his 20% loss of hearing could be the basis for finding him totally disabled, i.e., unemployable as a result of his impairment. In contrast, the heavy equipment operator who suffers the same hearing loss may experience little, if any, loss of wage earning capacity. Thus,

total disability does not mean total physical impairment. In *Entwistle v. Wilkins,* Utah, 626 P.2d 495 (1981), this Court stated total disability does not mean "that the injured employee must be unable to do any work at all."

> The fact that an injured employee may be able to do some kinds of tasks to earn occasional wages does not necessarily preclude a finding of total disability to perform the work or follow the occupation in which he was injured. His temporary disability may be found to be *total if he can no longer perform the duties of the character required in his occupation prior to his injury.*

*Id.* at 498 (footnotes omitted) (emphasis added). Some employees, although disabled with regard to their pre-injury occupation, may be rehabilitated and employed again. U.C.A., 1953, § 35-1-67 requires that the employee must cooperate with the division of vocational rehabilitation and that the division must find that the employee may not be rehabilitated before the Industrial Commission can order permanent total disability benefits.

 Some employees, however, cannot be rehabilitated and even though not in a state of abject helplessness "can no longer perform the duties ... required in [their] occupation[s]." *Entwistle, supra,* at 498. These employees fall into the so-called "odd-lot" category.

> Under the odd-lot doctrine, which is accepted in virtually every jurisdiction, total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market.

2 Larson, The Law of Workmen's Compensation § 57.51 at 10–164.24 (1983) (footnote omitted). Whether or not an employee falls into the odd-lot category depends on whether there is regular, dependable work available for the employee who does not rely on the sympathy of friends or his own superhuman efforts. Once the employee has presented evidence that he can no longer perform the duties required in his occupation and that he cannot be rehabilitated,

the burden shifts to the employer to prove the existence of regular, steady work that the employee can perform, taking into account the employee's education, mental capacity and age. 2 Larson, *supra,* 10–164.-51 to 10–164.54 and cases cited.

> A considerable number of the odd-lot cases involve claimants whose adaptability to the new situation created by their physical injury is constricted by lack of mental capacity or education. This is a sensible result, since it is a matter of common observation that a man whose sole stock in trade has been the capacity to perform physical movements, and whose ability to make those movements has been impaired by injury, is under a severe disadvantage in acquiring a dependable new means of livelihood.

*Id.* at 10–164.54 to 10–164.63 (footnotes omitted). A majority of the odd-lot cases are concerned with employees whose work required physical labor, and many of those employees were 50 years old or older with moderate or little education. *See, e.g., Halstead Industries v. Jones,* Ark.App., 603 S.W.2d 456 (1980) (affirming total permanent disability benefits to a 59-year-old illiterate laborer with a 15% physical impairment); *Laughlin v. City of Crowley,* La. App., 411 So.2d 708 (1982) (54-year-old sanitation worker with little education who was unable to return to heavy labor found totally and permanently disabled under "odd-lot" doctrine when employer was not able to show that there was work available); *Matter of Compensation of Livesay,* 55 Or.App. 390, 637 P.2d 1370 (1981) (affirming total disability benefits to 43-year-old laborer with a seventh-grade education and no special skills whose injuries left him with restricted movement, limited strength and an inability to sit or stand for any length of time); *Smith v. Asarco, Inc.,* Tenn., 627 S.W.2d 946 (1982) (affirming award of total disability benefits to 65-year-old miner with a sixth-grade education who was physically able to do sedentary work in a clean environment). As stated above, once the employee has demonstrated his impairment and presented evidence that he is no longer capable of performing his former work and that he cannot be rehabili-

tated, the burden shifts to the employer to show that regular work is available. In *Brown v. Safeway Stores, Inc.*, 82 N.M. 424, 483 P.2d 305 (1970), the court of appeals stated: "It is much easier for the [employer] to prove the employability of the [employee] for a particular job than for the [employee] to try to prove the universal negative of not being employable at any work." *Id.* at 427, 483 P.2d 305, 483 P.2d at 308. *See also Employers Mutual Liability Insurance Co. of Wisconsin v. Industrial Commission*, 25 Ariz.App. 117, 541 P.2d 580 (1975); *Transport Indemnity Co. v. Industrial Accident Commission*, 157 Cal.App.2d 542, 321 P.2d 21 (1958); *Lyons v. Industrial Special Indemnity Fund*, 98 Idaho 403, 565 P.2d 1360 (1977); *Hill v. U.S. Plywood-Champion Co.*, 12 Or.App. 1, 503 P.2d 728 (1972).

▮ This Court may set aside the Commission's award if the Commission's findings of fact do not support the award. U.C.A., 1953, § 35–1–84. In the instant case, the appellant is a miner with less than a high school education who has a 40-year history of heavy labor in the mines. He presented uncontroverted evidence of his impairment, his inability to perform the work required by his job and the opinion of the division of vocational rehabilitation that he could not be rehabilitated. He also testified that prior to his injury he had fully intended to continue to work rather than to retire. Thus, the appellant presented a prima facie case that he falls into the odd-lot category. The defendant Commission did not require the defendant employer to demonstrate the availability of regular work the appellant could perform, nor did any of the defendants present evidence indicating that the appellant had any reasonable wage earning capacity. As we have discussed, benefits are awarded on the basis of disability, not physical impairment. It appears the Commission's award in this case rested almost entirely on the size of the appellant's percentage of impairment and on the fact that appellant was eligible to retire, rather than on evidence of the appellant's wage-earning capacity.

1. Utah, 631 P.2d 888 (1981).

▮ Therefore, we find that the denial of permanent total disability benefits is unsupported by the Commission's findings of fact, and we reverse. We remand this matter to the Commission for further proceedings consistent with this opinion, which may include further evidence on the question of disability as defined herein or merely a recomputation of benefits based on total disability at the discretion of the Commission. Costs are awarded to the appellant.

STEWART and OAKS, JJ., concurring.

HALL, Chief Justice (dissenting):

Plaintiff's contentions of error attack the sufficiency of the evidence to support the order of the Commission. This Court's standard of review in such cases is as was recently stated in *Kaiser Steel Corp. v. Monfredi:*[1]

[T]he reviewing court's inquiry is whether the Commission's findings are "arbitrary and capricious" or "wholly without cause" or contrary to the "one [inevitable] conclusion from the evidence" or without "any substantial evidence to support them." Only then should the Commission's findings be displaced. [Bracketed language in original.]

The record before us contains substantial evidence to support the conclusion reached by the Commission that plaintiff's 26 percent permanent partial impairment rating did not rise to the level of permanent total disability simply because it occurred at a time when plaintiff was 69 years of age and eligible for retirement.

Following plaintiff's injury and subsequent surgery, his condition improved, and his doctor considered him ready for work. Both the medical panel and the attending physicians were in agreement that plaintiff's condition had stabilized and that he was free from pain. The medical panel also observed that plaintiff's "upper extremity motion was normal for age." Furthermore, plaintiff was performing yard work and other household tasks.

Plaintiff's injury occurred in January of 1980, and Dr. Lamb followed his condition closely over the next few months. On August 27, 1980, he observed: "He [plaintiff] did heavy work in the mine and probably shouldn't return to this for a couple to three months yet." During a subsequent examination, plaintiff advised Dr. Lamb that he was "in the process of retiring."

The record adequately supports the conclusion that plaintiff's decision to retire was voluntary and the natural result of his age rather than his inability to perform further work. His doctor simply suggested that he retire because of his age, and he did so. Plaintiff testified that miners customarily retire between the ages of 60 and 70. He further testified that upon his retirement he became the recipient of social security retirement benefits (as distinguished from disability benefits) and that he was also receiving a pension from his labor union.

I would affirm the order of the Commission.

HOWE, J., concurs in the dissenting opinion of HALL, C.J.