**Carl Jay SPENCER, Plaintiff,**

v.

**The INDUSTRIAL COMMISSION OF the STATE OF UTAH, N.V. Swire Bottlers, Industrial Indemnity, and the Second Injury Fund of the State of Utah, Defendants.**

**No. 860077.**

Supreme Court of Utah.

Feb. 9, 1987.

---

Virginius Dabney, Salt Lake City, for plaintiff.

Erie V. Boorman, Salt Lake City, for defendants.

**PER CURIAM:**

The claimant Carl Jay Spencer has petitioned this Court for a review of the Industrial Commission's denial of motion for review. The Commission affirmed the administrative law judge's ruling dismissing Spencer's application for a hearing on the issue of permanent total disability. We remand for a hearing on the merits.

In 1982, Spencer was thirty-seven years old and employed as a truck driver for N.V. Swire Bottlers (the employer). Spencer was injured in a truck accident on November 11, 1982, while driving an eighteen-wheel truck for his employer in Wyoming. His chief complaint upon admittance to the hospital emergency room was head, arm, and leg pain. He was diagnosed as having multiple contusions and was released after a brief stay. The following day, while driving the truck through Colorado, Spencer "blacked out," wrecked the truck, and woke up in a Vail, Colorado, hospital, where he had been admitted for care and observation. He was diagnosed as having suffered a concussion and was released the following day to the care of his local physician. Subsequent examination reports by the employer's physician indicate Spencer was suffering from post-concussion syndrome which included headaches, dizzy spells, and periods of loss of awareness manifested by glassy-eyed staring. Spencer received an EEG, a CT brain scan, and

x-rays of the cervical spine. Results on all showed no structural damage.

In February of 1983, Spencer was admitted to St. Mark's Hospital in Salt Lake City following a blackout episode. Again all organic studies proved normal. Spencer was also seen by Dr. McCann, a psychiatrist, who diagnosed hysterical conversion symptoms. Dr. Hebertson, Spencer's private physician, prescribed Dilantin to control seizures, discharged him under observation, and restricted him in his physical activities and driving privileges. In July of 1983, Spencer returned to work for his employer, performing light warehouse duties, but was terminated two months later because no work could be found for him.

Thereafter, Spencer's health deteriorated. He suffered continued headaches, increasing severity of seizures in the form of momentary lapses of awareness, non-rhythmical shaking of the upper extremities and head, and shaking of the entire body usually followed by eighteen hours of sleep. Spencer testified that he had been offered other employment as a truck driver but was never hired when potential employers learned of his history of seizures.

Spencer's previous industrial injuries included the removal of his fourth and fifth toes of the right foot and a shoulder injury which was surgically corrected.

Following a formal hearing before the Industrial Commission, Spencer was referred to a medical panel for examination and diagnosis. The medical panel found that Spencer had a fifteen percent permanent partial impairment of the whole body as a result of the November 11, 1982, truck accident, a twenty percent permanent partial impairment of the whole body as a result of the two earlier injuries, for an adjusted total of thirty-two percent permanent partial impairment of the whole body for loss of body functions from all causes and conditions.

The medical panel reviewed Spencer's medical history and found no evidence of structural injury or disease but believed that Spencer's symptoms were related to psychological function and based the fifteen percent permanent partial impairment stemming from the accident on "factitious seizure disorder and head pain, which are due to psychological stresses."

The administrative law judge adopted those findings in his order of May 29, 1985, and found that the weight of the evidence "vitiates a finding of tentative permanent and total disability, and none will be made at this time." Spencer was awarded permanent partial disability benefits and all medical expenses incurred in connection with the November 1982 accident.

In July of 1985, Spencer applied for a new hearing on the ground that his employer had refused payment of certain medical expenses. That same month, Spencer was evaluated by the Division of Vocational Rehabilitation. Its twenty-eight-page report indicates that Spencer had a fifth grade education but functioned at a third grade academic level and lacked overall physical stamina over any length of time. Basing its conclusion on those limited abilities, the Division of Vocational Rehabilitation found the prognosis for eventual competitive-level employment to be negative and suggested the possibility of sheltered employment as an option to remaining inactive at home. The report contains a notation that Spencer had a three- to five-minute spell where he lost awareness and stared into space. He then resumed testing as if nothing had happened. He staggered upon rising, and his right eyelid was swollen shut after he complained of headache.

On October 15, 1985, Spencer's counsel forwarded a copy of the report from the Division of Vocational Rehabilitation to the administrative law judge with the request that the issue of permanent total disability be heard at the scheduled hearing. On November 15, 1985, the administrative law judge entered its order dismissing the application for a hearing on the ground that the issues were barred by res judicata; that if Spencer had wanted the report to be considered he should have requested a continuance; and that as there had been no

change per se in Spencer's condition, the provisions of section 35–1–78 were inapplicable. The administrative law judge refused to be party to what he termed Spencer's subterfuge and procedural miscarriage to evade the untimeliness of his appeal. Spencer's motion for review was denied by the Industrial Commission on January 2, 1986, and this petition for writ of review followed.

Spencer claims that the Industrial Commission had continuous jurisdiction over his claim and acted arbitrarily and capriciously in denying him a hearing on the issue of permanent total disability. The employer counters that Spencer failed to demonstrate a significant change or new development or proof of inadequate award and that the ruling of May 29, 1985, denying him permanent total disability benefits, is therefore final and not subject to review. We base our determination of continuing jurisdiction exclusively on the report from the Division of Vocational Rehabilitation, as it was obtained subsequent to the May 29th order.

Section 35–1–78 of the Utah Workmen's Compensation Act provides:

> The powers and jurisdiction of the Commission over each case shall be continuing, and it may from time to time make such modification or change with respect to formal findings, or orders with respect thereto, as in its opinion may be justified. . . .

■ The power of the Industrial Commission to modify awards when "in its opinion" modification is justified is not an arbitrary power, *Mecham v. Industrial Commission*, 692 P.2d 783 (Utah 1984); *Buxton v. Industrial Commission*, 587 P.2d 121 (Utah 1978), but a power wedded to the duty to examine credible evidence. Under well-established principles of stare decisis, the basis of modification is provided by evidence of some significant change or new development in the claimant's injury or proof of the previous award's inadequacy. *Buxton, supra*, at 123.

■ The report submitted by Spencer after the order of May 29, 1985, may not be rejected under the doctrine of res judicata. Spencer correctly awaited the Industrial Commission's order of May 29th, inasmuch as a tentative finding of permanent total disability would automatically have resulted in his referral to the Division of Vocational Rehabilitation. U.C.A., 1953, § 35–1–67. Inherent in the Workmen's Compensation Act is the recognition that industrial injuries cannot always be diagnosed with absolute accuracy, nor their consequences predicted with complete certainty, and therefore the rule of res judicata is not ordinarily applicable in proceedings of this kind. *Mollerup Van Lines v. Adams*, 16 Utah 2d 235, 398 P.2d 882 (1965).

It is also well-established law that benefits are awarded on the basis of disability, not physical impairment, and that a claimant's disability may be found to be total if he can no longer perform the duties of the character required in his occupation prior to his injury. *Hardman v. Salt Lake City Fleet Management*, 725 P.2d 1323 (Utah 1986); *Marshall v. Industrial Commission*, 681 P.2d 208 (Utah 1984); *Northwest Carriers, Inc. v. Industrial Commission*, 639 P.2d 138 (Utah 1981). The Industrial Commission has the duty to determine from competent evidence whether a claimant's loss of function represents total disability in terms of capacity to perform remunerative employment. *Buxton, supra*, at 123. The determination should encompass such factors as the education, mental capacity, and age of the claimant. *Marshall, supra* (defining and applying the odd-lot doctrine where justified); *Northwest Carriers, Inc., supra*.

■ From the exhaustive tests taken by the Division of Vocational Rehabilitation and its subsequent evaluation, as well as from the medical reports in the file, it is clear that as a result of his cranial injury, Spencer suffers from blurred vision, dizziness, headaches, seizures, ataxia, weakness of the left side, and limited physical stamina, dysfunctions which would render him unfit for work as a truck driver. The Division of Vocational Rehabilitation's assessment of Spencer's academic skills as

not rising above a third grade level led to its conclusion that Spencer's prognosis for competitive-level employment was found to be negative. That information presented sufficient evidence to the Commission that the previous award might have been inadequate, and it should have exercised its continuing jurisdiction and granted a new hearing. That information also constitutes prima facie evidence that Spencer can no longer perform the duties required in his occupation and thus he cannot be rehabilitated, so that the burden shifts to the employer to prove the existence of regular steady work that the employee can perform, taking into consideration the employee's education, mental capacity, and age. *Marshall v. Industrial Commission, supra,* at 212 (citing 2 A. Larson, *The Law of Workmen's Compensation* § 57.51 (1983)).

Because we remand for further hearing, one additional comment should be made. The employer appears to read a finding of malingering into the report of the medical panel. However, the medical panel did not conclude that Spencer's seizures were not legitimate, nor did Spencer admit that he had numerous truck driving job opportunities if he would just end his artificial seizures. The record is completely devoid of any implication of malingering. Instead, read in harmony, all of the reports in the file indicate that Spencer suffers from a post-traumatic stress disorder that is varyingly labeled as "factitious[1] seizure disorder," "conversion reaction," or "hysterical conversion symptoms."[2]

The absence of bona fide seizures noted by the medical panel simply refers to the absence of organic, structural causes of the seizures, as manifested by the absence of loss of sphincter control and rhythmic shaking noted in the various medical reports. The medical panel's findings and the administrative law judge's adoption of those findings of permanent partial impairment conclusively establish the legitimacy of Spencer's impairment.

When there has been a physical accident or trauma and a claimant's disability is increased or prolonged by traumatic neurosis, conversion hysteria, or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable. 1B A. Larson, *supra,* § 42.22(a) (1986); *Racz v. Chennault, Inc.,* 418 So.2d 413 (Fla.App.1982); *Deziel v. Difco Laboratories, Inc.,* 403 Mich. 1, 268 N.W.2d 1 (1978); *Elliott v. Precision Castparts Corp.,* 30 Or.App. 399, 567 P.2d 566 (1977). See also *Northwest Carriers, Inc., supra,* and *Intermountain Health Care, Inc. v. Ortega,* 562 P.2d 617 (Utah 1977), where this Court affirmed the award of benefits for preexisting psychologically based disabilities.

The case is remanded to the Industrial Commission for the purpose of considering Spencer's claim of total permanent disability in light of the evaluation by the Division of Vocational Rehabilitation.

So ordered.

---

**1.** Factitious: artificial; not natural. Factitial: produced by artificial means; unintentionally produced. *Dorland's Illustrated Medical Dictionary* (26th ed. 1981).

**2.** A form of hysteria or psychoneurosis in which physical signs and symptoms are substituted for anxiety. A condition in which the cause of anxiety is converted into functional symptoms which may include blindness or deafness, paralysis, etc. 1 J.E. Schmidt, *Attorneys' Dictionary of Medicine* (1986). Hysteria may mimic any disease. *Id.*